Banton v. Wilson.

[**400**]   BANTON v. WILSON.

If the court can act upon any one subject of the petition, any matter on which the plaintiff asks its interposition, it must be retained.

The right to an office is one which may be litigated between parties who claim adversely. The proceeding in such a case is a "suit, complaint, or plea," within the meaning of the Constitution, over which the District Courts have original jurisdiction. (Note 85.)

A *mandamus* is the proper writ to restore a party to an office from which he has been illegally ousted, or to put a party in possession of an office which is illegally detained from him, and to cause the books, papers, and archives thereof to be delivered into his possession. (Note 86.)

The only information by *quo warranto* that could be filed in this State, on application by a private person, would be where a public injury is done by the usurpation of a franchise; and the court would possibly have discretionary power to order, in proper cases, an information to be filed by the District Attorney.

The eleventh section of the fourth article of the Constitution authorizes the district judge to appoint a clerk, in case of a vacancy, "until a regular election can be held." The term "regular election" does not mean a general election, but any election by the people which is provided for by law f. g. to fill that vacancy.

Where the term of an office is fixed by the Constitution at say four years, each succeeding incumbent, although elected to fill a vacancy, is entitled, unless it be otherwise provided in the Constitution itself, to hold the office for the full period.

Appeal from Walker. Petition by Banton for a *mandamus* to Wilson to deliver up to him the office of clerk of the District Court of Walker county, together with the records, &c.

·In September, 1846, the clerk of said court, who had been elected the August previous, died. In October the district judge appointed Banton, the appellant, clerk, until a regular election could be held. The Chief Justice of Walker county issued and published an order, in due time, for an election on the 1st day of November, 1847, to fill the vacancy in the office, the duties of which were then being discharged by Banton under his appointment of October previous. The election was on the same day with that of Governor, Lieutenant Governor, and members of the Legislature. Wilson received the [**401**] high-

Banton v. Wilson.

est number of votes, and, being commissioned, entered upon the discharge of the duties of the office. Banton claimed the office by virtue of his previous appointment, and brought this suit to be restored to it.

*Oakum and Taylor*, for appellant, argued that the terms "regular election," in the eleventh section of the fourth article of the Constitution, meant the regular periodical election provided by law for the election of clerks of the District Courts. This construction would give the office to the plaintiff until after the regular election of District Court clerks in 1850, four years from the last regular election. But as there was some doubt about the proper construction of the terms "regular election," the Legislature of 1846 undertook to construe them, and enacted (p. 204, sec. 19,) "that in case of vacancy the District Court shall appoint a clerk, who shall hold the office until the next regular election for county officers," &c. Under this provision the appellant was entitled to hold the office until after the first Monday in August, A. D. 1848. The Legislature having thus construed the Constitution, this court will not declare their construction unconstitutional unless it be clearly so. (Sutherland *v.* De Leon, 1 Tex. R., 304.)

*P. W. Gray*, for appellee, argued that the terms "regular election" meant any election by the people in the mode and at the time and place prescribed by law. The term "regular" refers to the constituent of the election. *Regularly*, under the Constitution, clerks are to be elected by the people. But to prevent mischief, in case of a vacancy the district judge is authorized to appoint a clerk until a regular election can be held. Regularly the people elect the clerk; irregularly the judge appoints one. Any election, therefore, by the people, at such time and place as may be provided by statute, is a regular election. The statutes provide that in cases of vacancy the Chief Justice shall order an election to fill it. That was done in this case.

II. But if Wilson was not duly elected, what right has the [402] appellant to question his claim? Unless he have a specific legal right to the office, and has been illegally ousted therefrom, he has no cause of complaint, and has no right to the writ of *mandamus*. (3 Black. Com., 110; 2 Tom. Law Dict., 513; 8 East. R., 219; Dew *v.* Judges, 3 H. & M. R., 1; People *v.* Judges, 1 Doug. R., 319; *Ex parte* Daughtry, 6 Ired. R., 155; Cowp. R., 523; Rex *v.* Mayor, &c., of Oxford. 2 T. R., 177; 3 Id., 578.) The answer of Wilson, which is not controverted, shows that Banton surrendered the office to him upon written agreement.

The only mode by which appellee's right to the office can be questioned by the public is by *quo warranto*. (Bradley *v.* McCrabb, Dallam, 509; Commonwealth *v.* Dearborn, 15 Mass. R., 125; Same *v.* Fowler, 10 Id., 295; People *v.* Tibbetts, 4 Cow. R., 358; People *v.* Van Slyck, Id., 297; People *v.* Forquer, Breese R., 68; *Ex parte* Bellows, 1 Mo. R., 115.)

HEMPHILL, CH. J. This was an application by the appellant for a *mandamus* to compel the appellee to deliver to him the office of clerk of the District Court of the county of Walker, with all the immunities, records, books, and papers belonging to the said office.

Before proceeding to the examination of the issues raised and tried in the court below, we will dispose of the objections made here to the jurisdiction of the court and the appropriateness of the remedy.

It is contended in this and also in other cases before the court that the District Courts have no authority, under the Constitution and laws of the State, to issue writs of *mandamus*, except when they may be necessary to enforce their own jurisdiction, and to give them a general superintendence and control over inferior jurisdictions. The counsel of the appellant appears by brief, and not being aware that an objection of this character would be raised, we have not the advantage of the able argument which doubtless would have been presented by [403] him in support of the jurisdiction of the court to award or refuse the

201

writ in this case. Questions of jurisdiction may, however, always be raised; and when presented, they must be examined and decided, whether they be fully and elaborately or but imperfectly discussed, and whether by both or but one of the parties. .

In the lucid views of the counsel for the appellant it is urged very forcibly that the jurisdiction and powers of the District Court are specified, defined, and limited by the Constitution, and that it is equally beyond the power of the Legislature to abridge or extend its powers; and that the authority to issue a writ of *mandamus* to enforce its own or to control an inferior jurisdiction does not embrace every possible case in which the writ may be appropriately issued.

The only point which will be examined is the extent of power conferred on the courts by the authority to issue all writs necessary to enforce their own jurisdiction. And that this may be the better understood, reference will be had to the chart of their powers, to be found in the 10th section of the 4th article of the Constitution, and which is expressed in the following terms, viz : " The District Courts shall have original jurisdiction of all criminal cases, of all suits in behalf of the State to recover penalties, forfeitures, and escheats, and of all cases of divorce, and of all suits, complaints, and pleas whatever, without regard to any distinction between law and equity, when the matter in controversy shall be valued at or amount to one hundred dollars; and the said courts or the judge thereof shall have power to issue all writs necessary to enforce their own jurisdiction and to give them a general superintendence and control over inferior jurisdictions." The point to be decided is, was the writ necessary to enforce the jurisdiction of the court?

On the solution of this question will depend the power of the court to take jurisdiction over the case presented for adjudication. What is jurisdiction? It has been defined to be the power to hear and determine a cause. It is *coram judice*, [404] whenever a case is presented, which brings this power into action. If the petitioner states such a case in his petition that on a demurrer the court would render judgment in his favor, it is an undoubted case of jurisdiction. Whether, on an answer denying and putting in issue the allegations of the petition, the petitioner makes out his case, is the exercise of jurisdiction conferred by the filing of a petition containing all the requisites, and in the manner prescribed by law. (6 Pet. R., 709.) It is the power to hear and determine the subject-matter in controversy between the parties to a suit; to adjudicate or exercise any judicial power over them. The question is whether, on a case before a court, their action is judicial or extrajudicial, with or without the'authority of law to render a judgment or decree upon the rights of the litigant parties. If the law confers the power to render a judgment or decree, then the court has jurisdiction. (12 Pet. R., 718.)

If the court can act on any one subject of the petition, any matter on which the plaintiff asks its interposition, it must be retained; so that the true inquiry is not as to the extent but the existence of any jurisdiction. (12 Pet. R., 732.)

These principles, deduced from the authorities, show very clearly what is to be understood by the jurisdiction of a court.

Did the matters contained in the pleadings in this case present a proper case for the exercise of the judicial power of the court? Had it power, under any of the constitutional grants of authority, to inquire into the matters litigated between the parties? If there was power to hear or act upon or determine the case, there was authority to render judgment and issue the appropriate writ to enforce that judgment. The court has, by the Constitution, original jurisdiction of all suits, complaints, and pleas whatever, without regard to any distinction between law and equity. Is this a suit, complaint, or plea, either at law or in equity? For if it be either, the court has jurisdiction and the express authority to issue all writs necessary to enforce or make effectual that jurisdiction. The right [405] to an office is one which may be litigated between

parties who claim adversely, although proceedings may also be instituted by the Government to oust an intruder from office, or those exercising franchises in derogation of the rights of the State. If the rights can be litigated, it must be by a suit, a judicial proceeding at law or in equity; and if so, it is the subject of judicial cognizance by the District Court; and in the exercise of that jurisdiction it has the power to issue the rule to show cause, the alternative, and the peremptory *mandamus* for the purpose of effectually enforcing the jurisdiction of the court. The discussion of the subject might be further extended, and perhaps would have been had the question been argued by both parties. Under the circumstances we do not deem it necessary to continue the investigation. The matter in controversy was a subject over which the court had no cognizance by a constitutional grant of power. It could decide the right in favor of either party; and if determined for the plaintiff, the writ should have been awarded as the appropriate process, and therefore necessary to give effect to the judgment in the cause.

Another objection is urged : that *mandamus* is not the appropriate remedy to effect the object sought to be accomplished by this proceeding. This objection was urged and overruled in the case of Bradley *v.* McCrabb, decided by the Supreme Court of the Republic. (Dallam, 506.) Some of the purposes to which the writ of *mandamus* may be applied were there enumerated. It was stated to be a proper remedy to restore to his office the clerk of a court who had been ousted therefrom by the illegal appointment of another person. (2 Tuck. Comm., 202.) That at common law the writ of *quo warranto* will lie, in the name of the king or the Republic, against any person or corporation, as well for the usurpation as for the non-user or abuse of any franchise or liberty, to show by what warrant or authority they claim such right or franchise; but where the object was not only to restore to office him who had been illegally ousted, but also to cause the books, [406] papers, and archives thereof to be delivered to his possession, the writ operated a more complete and effectual remedy.

This has been the settled law of the court and the country for the last seven years; and if it were admitted that it might properly have been decided differently, yet it has been too long established to be disturbed on slight grounds. It was perhaps unfortunate that any of these writs should have been introduced by name, and as possessing all or any of their incidents at common law. Why should an *action* to try the right to an office have a name or designation any more than an action to try the right to property? All forms of action have been abolished in our system of jurisprudence, or rather they were never introduced. The distinctive actions of assumpsit, debt, trover, trespass, detinue, action on the case, &c., are not now nor were they ever recognized or permitted to mar the beauty of our judicial system. The distinctive forms of action were supposed at common law to be essential to the administration of justice. We know from experience that the supposition is totally unfounded, and the distinctions in actions by *quo warranto, mandamus, &c.,* are equally groundless. The writ called *quo warranto* was the ancient method of proceeding against those who exercised franchises in derogation of the rights of the crown. This was the king's writ of right, and issued whenever his attorney thought it expedient. Under some early statutes a general proclamation was to be made to command all those who enjoyed franchises to come before the justices in *eyre* and show their title, under pain of forfeiture, if they neglected to do so, in the next *eyre*, unless they should come before the king in his bench or other of his justices. These proclamations were temporary, and the writ has grown obsolete; but on it is founded the information in the nature of *quo warranto* at common law, filed by the king's attorney general, of his own authority, or by the king's coroner. (Wil. M. C., 453; 9 Co. R., 28; 3 Burr. R., 1616.)

Besides the cases in which the statute of Anne has empowered [407] the

court to grant leave to a private person to file an information in the nature of a *quo warranto*, it has power at common law to direct such an information to be filed by the master of the crown office, on application by any subject who shows that a public injury is done by the usurpation of franchises. The information is of a criminal character; and on a verdict against the defendant, the court will impose a fine for the offense. (3 Burr. R., 1616; 1 Id., 407; Wil. M. C., 457.)

The information under the statute of Anne, filed with leave of the court at the relation of any private person, assumed finally the form of an action between the parties, the fine being only nominal. This cannot be used in this State, the statute of Anne not being in force. (2 Tex. R., 150.)

The only information by *quo warranto* that could be filed in this State on application by a private person would be where a public injury is done by the usurpation of franchises; and the court would possibly have discretionary power to order, in proper cases, an information to be filed by the district attorney.

The object of the proceeding in this case is not to vindicate the rights of the public or have the offense punished as a misdemeanor, but the plaintiff, having a clear legal right, as he believes, to the office, prays for his individual benefit that the same be restored to him, with its emoluments. Waiving further discussion of the subject, I proceed to the examination of the merits of the case.

The material facts are that John D. Banton, clerk of the District Court, dying in September, 1846, the appellant, Glover W. Banton, was appointed in October, 1846, by the presiding judge of the district to fill the vacancy. At an election for Governor, Lieutenant Governor, and members of the State Legislature, and for clerk of the District Court of Walker county, held on the 1st November, 1847, the appellee, Wilson, was elected clerk of the District Court, and entered upon the duties of his office about the last of December, 1847.

[**408**] The only point I shall examine is whether he was duly and constitutionally elected to the office.

The provisions of the Constitution and the statutes by which the question must be determined are as follows: "There shall be a clerk of the District Court for each county, who shall be elected by the qualified voters for the members of the Legislature, and who shall hold his office for four years." &c. "In case of vacancy the judge of the district shall have the power to appoint a clerk until a regular election can be held." (Sec. 11, art. IV, Const.) In case of a vacancy the District Court shall appoint a clerk, who shall hold the office until the next regular election for county officers, &c. (Sec. 19 of the act to organize the District Courts, and to define their powers and jurisdiction, approved May 11, 1846, p. 204.)

An act regulating elections was approved the same day, and by its third section it was enacted that the Chief Justice, or in case of vacancy in that office or the inability of the Chief Justice to act, then any two of the county commissioners, shall order an election in their respective counties. By the 5th section of the same act it was declared "that in all cases of vacancy in any civil office of the county which by law is filled by election of the people, the officer or officers authorized by this act to order elections shall immediately make such order for an election to fill the vacancy by giving like notice and issuing writs as prescribed for regular elections." (Laws of 1846, p. 210.)

What is meant by the constitutional provision that the appointee of the judge shall hold his office until a regular election can be held? Does it necessarily mean a regular election for any other office than that of clerk itself? The terms "regular election" are to be understood undoubtedly as an election by the people at the time and in the mode prescribed and regulated by law. In section 7 of the 3d article of the Constitution it is declared that all elections by the people shall be held at such time and place in the several counties, [**409**] cities, or towns as are now or may be hereafter designated by law.

## Banton v. Wilson.

Was there any legal provision by which an election could be held for the office of clerk of the District Court at an earlier or different period from that of the regular or, as the Legislature perhaps intended, the general election for county officers, if it be admitted that by the laws then in force any provision was made for such general election?

If by law an election could be held to fill such vacancy at any other period than the time or election of other county officers or any one or more of them, the statutory provision authorizing the appointee of the judge to hold until a regular election for such county officers is in conflict with the Constitution; because, under that fundamental chart, the *ad interim* clerk could hold only until a regular election to fill the office of clerk, or, in other words, until an election for that purpose was held in the time, mode, and places prescribed by law.

The 5th section of the act regulating elections, approved on the same day with the District Court law, requires, in cases of vacancy of any civil office of the county, an order for an election to fill such vacancy to be issued immediately.

Under this law an immediate election could be held to fill a vacancy in the office of clerk, and when so held it would be held at the time and in the manner prescribed by law; and being an election, it would necessarily be the regular election designated by the Constitution at the period at which the office of temporary clerk should cease and that of the regular officer deriving his authority directly from the people would commence.

The appellant could retain his office only until a legal election could be held to fill the vacancy, because a legal election is a regular election for that purpose. To this limit his right is fixed by the Constitution, and which it was not in the power of the Legislature either to enlarge or abridge.

If there had been no law authorizing elections to fill vacancies, [410] the authority of the Legislature was competent to vest the temporary clerk with the power until an election would be held for other officers, or for any time less than four years, the duration of the constitutional tenure of the office. But under the laws as they existed the right to hold office after the vacancy was legally filled could not be conferred.

The order of the Chief Justice to hold an election for the office of clerk was issued, and the election was held by the authority of law; and the appellee, being duly elected, is entitled to hold, and the writ of *mandamus* was therefore properly refused.

The statutes of 1846 did not prescribe any fixed period for elections of county officers after the first election for that purpose in July, 1846.

No such provision would be constitutional, or at least but partially so. The tenure of several of the county officers is fixed by the Constitution, and the incumbent elected to fill the office or a vacancy is entitled to hold to the full end and term of the period guaranteed by the Constitution. There is no probability that all the incumbents of county offices would hold the entire term. Vacancies by death, resignation, or otherwise must in the nature of things be of frequent occurrence; and if they be filled by election, the incumbent is secured for the constitutional limit in the enjoyment of the office. (Bradley *v.* McCrabb, Dallam, 504; Roman *v.* Moody, Id., 512; Shelby *v.* Johnson, Id., 597.)

The provision that a temporary clerk should hold until a regular election for county officers has no certain or definite meaning. No general election for county officers had been prescribed; and if the Constitution opposed no obstacle it would have been difficult, if not impossible, under the laws of 1846, to have carried into effect the intention of the Legislature. We are of opinion that there is no error in the judgment, and it is ordered that the same be affirmed.

Judgment affirmed.

Note 85.—See Wright *v.* Fawcett, 42 T., 203; Rogers *v.* Johns, 42 T., 339.
Note 86.—Lindsay *v.* Luckett, 20 T., 516.