**MITCHELL v. PERKINS et al.**

No. 6356.

Court of Civil Appeals of Texas. Amarillo.

Dec. 21, 1953.

Rehearing Denied Feb. 1, 1954.

R. H. Munsterman, Levelland, for appellant.

Burks & McNeil, Crenshaw, Dupree & Milam, Lubbock, Allison & Allison, Levelland, for appellees.

NORTHCUTT, Justice.

This was a suit brought by J. J. Perkins and wife, Nellie Perkins, and Russell Perkins as plaintiffs complaining of Fred W. Shield, L. E. Mitchell, and Bert Wade as defendants. Wade, having filed a disclaimer, was not considered further and neither was Russell Perkins as he was only an agricultural tenant. Plaintiffs brought this action for title and possession of the mineral estate with writ of restitution and possession, or for his damages, or that the court require the defendants to commence drilling of other wells and for such other relief to which they may show themselves justly entitled. Plaintiffs allege that on or about November 12, 1947, plaintiffs, J. J. Perkins and wife, Nellie Perkins, entered into an oil, gas, and mineral contract with the defendant, L. E. Mitchell, covering the following described land situated in Hockley County, Texas, described as all of Labor twelve (12) in League forty-five (45) of the Rains County school land, containing 203.4 acres of land, retaining unto themselves a $\frac{1}{8}$ royalty on all oil and gas produced and saved from said premises. Said lease contract was for a primary term of 13 months and 18 days from the date of the lease and as long thereafter as oil, gas,

or other minerals is produced from such land. Thereafter on February 12, 1948, L. E. Mitchell assigned said oil, gas and mineral lease to Cody Oil Company but retaining a $\frac{2}{8}$ interest and with other provisions and on February 28, 1948, Cody Oil Company assigned said oil, gas, and mineral lease to Fred W. Shield.

Shield drilled an oil and gas well down to what they call the third zone, which was to a total depth of 4,903 feet. This well tested 3,709,000 cubic feet of gas per day but very little oil. In the transfer from L. E. Mitchell to Cody Oil Company, it was provided five wells were to be drilled and that assignee was to acquire full right, title, and interest of said lease in and to 40 acres of land upon the completion of each well, and each 40-acre tract to be in the form of a square as practicable, the exact location of each 40-acre tract to be at the discretion of assignee. It was further provided in the transfer that on completion of each well the assignee might elect to terminate the agreement as to each succeeding well by executing a release to L. E. Mitchell of the undeveloped portion of the land.

After Shield completed the well above mentioned, he was of the opinion under the circumstances that he did not care to drill other wells and he re-transferred 163.4 acres of this lease to L. E. Mitchell and retained 40 acres where the well was located.

It was the contention of Fred Shield that he had complied with his contract and was entitled to retain the 40 acres with the well drilled by him. It being the contention of L. E. Mitchell that by the drilling of the well in question by Fred Shield that Fred Shield had fully complied with the terms of the original lease and that Mitchell was entitled to the benefit of said action of Fred Shield. Mitchell claimed that by the drilling of the well by Shield the whole of said lease and leasehold estate was in full force and effect; Mitchell further claimed by reason of the barren and unproductive producing capacities of the balance of said lease that a reasonably prudent operator, under the same or similar circumstances in

the area in which said lease is situated, would not further attempt to develop said lease because of the financial loss.

The case being tried to a jury, Mitchell made a motion for an instructed verdict after plaintiffs had rested their case and renewed his motion after all parties had closed, which motions were overruled by the Court. The Court then instructed the jury to return a verdict in favor of Fred W. Shield as against all the plaintiffs. The jury returned a verdict for Shield as directed by the Court. The Court then, over the objections of appellant, submitted the case to the jury upon four special issues. Said issues and answers of the jury thereto were as follows:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that the defendant, L. E. Mitchell, failed to develop the lease estate in question in the manner in which a reasonably prudent operator would have done under the same or similar circumstances?

"Answer 'He did fail to so develop' or 'He did not fail to develop.'

"Answer: 'He did fail to so develop'

"Special Issue No. 2

"What number of wells, if any, do you find from a preponderance of the evidence would constitute reasonable development of the lease estate in question?

"By the term 'reasonable development,' as used herein, is meant such development as a reasonably prudent operator would perform on the land under the same or similar circumstances.

"Answer by stating the number of wells, if any.

"Answer: One

"If you have found in answer to Special Issue No. 1 that the defendant, L. E. Mitchell, has failed to reasonably develop the lease estate in question, and only in such event, then answer the following special issue:

"Special Issue No. 3

"Do you find from a preponderance of the evidence that the plaintiffs, J. J. Perkins and wife, Nellie Perkins, have sustained damage by reason of defendant, L. E. Mitchell's, failure to so develop?

"Answer 'They did sustain damage' or 'They did not sustain damage.'

"Answer: 'They did sustain damage'

"If you have answered Special Issue No. 3 'They did sustain damage' and only in such event, then answer the following special issue:

"Special Issue No. 4

"Do you find from a preponderance of the evidence that the amount of damages so suffered, if any, is impossible of ascertainment?

"Answer 'The damage is impossible of ascertainment' or 'The damage is not impossible of ascertainment.'

"Answer: 'The damage is impossible of ascertainment'

The court rendered judgment for Fred Shield as to the 40 acres claimed by him, by its judgment provided that L. E. Mitchell could begin drilling of a well within 90 days from the date of the judgment and proceed with due diligence to a depth of 5,000 feet unless oil or gas in paying quantities be encountered at a lesser depth, and that the parties might come before the Court at the expiration of said 90-day period for the purpose of making proof as to whether or not said drilling operations had been commenced and proceeded with due diligence, and for such further orders in the premises as might be appropriate.

■ L. E. Mitchell made a motion for a new trial but the same was overruled by the Court and hence this appeal. Since appellees, J. J. Perkins and Nellie Perkins, contend that this appeal should be dis-

missed for the reason that the judgment entered in the trial court was interlocutory in nature and was not a final judgment and therefore not appealable this point should be first disposed of. The issues of law and facts necessary to be determined were determined and the case completely disposed of so far as the trial court had power to do. The Court had found by the findings of the jury that L. E. Mitchell had failed to develop the lease as a reasonably prudent operator would have done under the same or similar circumstances, and that he should have dug one well on the 163.4 acres. The Court then gave him 90 days in which to begin compliance therewith, as provided by the lease contract, by the drilling of the one well. As to appellees, J. J. Perkins and Nellie Perkins, the Court found they were damaged by Mitchell's failure to so develop the lease but that the damage was impossible of ascertainment. The judgment is final as to the rights of the parties and all that remains to be done is for Mitchell to comply with its terms. The Supreme Court, in the case of Hargrove v. Insurance Inv. Corp., 142 Tex. 111, 176 S.W.2d 744, 747, stated:

"Judge Gallagher's opinion in Ware v. Jones, Tex.Com.App., 250 S.W. 663, 665, contains the following statement of the rule established in this state, with citation of authorities:

" 'A "final judgment" is one which awards the judicial consequences which the law attaches to the facts and determines the controversies between the parties over the subject-matter. It terminates the litigation of the parties on the merits of the case so that nothing remains to be done but to execute it according to its terms. Hanks v. Thompson, 5 Tex. 6, 8; West v. Bagby, 12 Tex. 34, 62 Am.Dec. 512; Grant v. [Phoenix Mut. Life] Insurance Co., 106 U.S. 429, 430, 431, 1 S.Ct. 414, 27 L.Ed. 237; 3 C.J. 441.

" 'However, if the rights controverted by the parties be settled by the judgment, it will be held final, although further proceedings should be required to carry the judgment into full effect. Such proceedings may be expressly provided for in the face of the judgment without affecting its finality, provided they are merely incidental to its proper execution. Cannon v. Hemphill, 7 Tex. 184, 194; Merle v. Andrews, 4 Tex. 200, 207–211; Redus v. Burnett, 59 Tex. 576, 577, 578, 581; McFarland v. Hall's Heirs, 17 Tex. 676, 690, 692; Shannon v. Taylor, 16 Tex. 413, 419; Harmon v. Bynum, 40 Tex. 324, 331, 332; White v. Mitchell, 60 Tex. 164; Beene v. National Liquor Co., Tex.Civ.App., 189 S.W. 86; Zappettini v. Buckles, 167 Cal. 27, 138 P. 696, 698.'

\* \* \* \* \* \*

"In the partition cases, the reason, or one of the reasons, given for permitting an appeal from the decree specifying the shares or interests of the parties and appointing commissioners to make the actual division, is that by such decree the merits of the case are determined and the rights of the parties concluded, with nothing remaining to be done but the enforcement of the decree by the division of the property in conformity with rules therein settled. Cannon v. Hemphill, 7 Tex. 184, 193–197."

The record here does not show any controversy between the parties not disposed of by the judgment, and the contention of the appellees that the judgment in this case is interlocutory in nature and is not a final judgment and therefore not appealable is hereby overruled.

█ It is elementary, that where gas or oil is discovered within the primary term, lessee is entitled to a reasonable time within which to market the same. Cowden v. General Crude Oil Co., Tex.Civ.App., 217 S.W.2d 109.

█ There is no question but what Fred Shield completed a gas well on the lease in question within the primary term. Appellees, J. J. Perkins and Nellie Perkins, brought this action seeking to cancel the

oil and gas lease. The burden of showing that the gas well in question was not producing in paying quantities so as to authorize cancellation of the lease was on the party seeking cancellation. Persky v. First State Bank of Vernon, Tex.Civ.App., 117 S.W.2d 861. Said appellees having failed in making such proof, the judgment of the trial court rendering judgment for Fred W. Shield is in all things affirmed.

By appellant's first five points of error, he complains of the Court's refusal to grant his motion for an instructed verdict because of lack of proof that the Phillips' damage was uncertain and could not be ascertained; that the land had not been reasonably developed; and as to what constitutes reasonable development. This case was submitted to the jury upon the theory as stated in the case of Fort Worth Nat. Bank v. McLean, Tex.Civ.App., 245 S.W. 2d 309, 310, where it is stated:

"From a careful study of the law in Texas, it is our opinion that a lessor, in order to secure a judgment requiring lessee to develop and decreeing a forfeiture upon a failure so to do must show the following: (a) that his damage is uncertain and cannot be ascertained; (b) that the land had not been reasonably developed; (c) what constitutes reasonable development. Lido Oil Co. v. W. T. Waggoner Estate, Tex.Civ.App., 31 S.W.2d 154 (Writ Ref.); Rendleman v. Barlett, Tex. Civ.App., 21 S.W.2d 58."

In the case at bar the jury was asked if Mitchell failed to develop the lease; what number of wells would constitute reasonable development; if plaintiffs had been damaged by Mitchell's failure to develop; and if it was impossible to ascertain the amount of such damages. Each of these questions was answered favorably to the plaintiffs below.

■ The record shows Fred Shield had been in the oil producing business for about twenty-five years. He was the one who drilled the well on this lease and he was willing to drill one more well as he thought he might get an oil well. By the testimony of Fred Shield the jury could reason and find that one more well would constitute reasonable development—plaintiffs were damaged but it was impossible to ascertain the amount of damages—and that Mitchell had failed to reasonably develop the lease. Appellant's first five points of error are overruled.

■ Appellant presents his points 6 to 12 together. All of these points have reference to the lack of testimony concerning the special issues. Especially objecting to special issue No. 1, for the reason that such issue is without foundation in the state of the record or the evidence adduced by the plaintiffs upon the trial of this cause to the effect that such lease in its entirety or, in the alternative, the balance of such lease would be capable of reasonable development.

Special issue No. 1 asks the question whether Mitchell failed to develop the lease estate in question in the manner in which a reasonably prudent operator would have done under the same or similar circumstances. It is true the Court had already directed a verdict for Fred Shield as to 40 acres of the original 203.4 acres. This would leave 163.4 acres of the lease that was undeveloped. Did the Court by submitting special issue No. 1 have reference to the 163.4 acres or to the 203.4 acres? The 163.4 acres had not been developed at all and there was no question to submit to the jury as to whether it had been reasonably developed. If special issue No. 1 had reference to the 203.4 acres then the jury answered, "one well". This would determine that the whole lease had been developed and would certainly have been a conflict in the findings of the jury. In the original lease, the rights of either party could be assigned in whole or in part. The lease to the 203.4 acres had been transferred to Fred Shield except as to the ⅔ overriding royalty retained by Mitchell, and 163.4 acres of said lease had been reassigned to Mitchell. Appellant's assignment of error No. 6 will be sustained and the judgment of the trial court reversed

and remanded for a new trial as to the 163.4 acres covered by the judgment as being undeveloped by appellant, L. E. Mitchell. Since reversing this case as to this point the other assignments of error will not be discussed as they will not likely arise in another trial.

Judgment of the trial court affirmed as to Fred W. Shield and reversed and remanded as to L. E. Mitchell.