**B. H. BURNETT et al., Appellants,**

**v.**

**R. LACY, Inc., Appellees.**

**No. 6902.**

Court of Civil Appeals of Texas.

Texarkana.

Sept. 6, 1956.

Rehearing Denied Oct. 4, 1956.

Wardlow Lane, Center, Smith & Hall, Marshall, for appellants.

Jones, Brian & Jones, Marshall, William Greene, Shreveport, La., J. T. Harris, Longview, Long, String, Jackson & Strong, Carthage, for appellees.

FANNING, Justice.

B. H. Burnett, J. L. Burnett, Sr., E. L. Burnett, Mrs. Juanita Lanier, a feme sole, Mrs. Arena Jean Fitzpatrick and husband, Phillip Fitzpatrick, J. L. Burnett, Jr., H. L. Hauert, Frank B. McKnight, individually and as independent executor and trustee of the estate of C. F. McKnight, deceased; E. T. Burnett, Ada McKnight, Cora E. McKnight, F. H. Geiler, Elda M. Geiler, Elva J. Duncan, C. S. Burton, and Ethel B. Burton, filed suit against R. Lacy Inc., and G. J. Hollandsworth, seeking damages for alleged failure to develop reasonably and seeking cancellation of two oil, gas and mineral leases entered into between E. L. Burnett and B. H. Burnett with R. Lacy, on land in Panola County, Texas (which leases covered 3,235 acres), and seeking in the alternative judgment requiring an operation and drilling program whereby 2,109 acres of the lease in question would be developed in gas and/or oil units.

Pendente lite C. H. Lyons, Jr., intervened, asserting, among other things, that he had

commenced an orderly drilling program upon the premises subsequent to the filing of the suit, etc.

Special issues were submitted to a jury in the cause. Special Issues Nos. 1 and 2 and the answers thereto were as follows:

*No. 1:* "Do you find from a preponderance of the evidence that the defendants, R. Lacy, Inc., and G. J. Hollandsworth, failed to develop the lease estate in question in the manner in which a reasonably prudent operator would have done under the same or similar circumstances, prior to the date this lawsuit was filed on August 26, 1954?

"Answer 'They did fail to so develop' or 'They did not fail to develop.'

*Answer:* "They did not fail to develop.

*No. 2:* "What number of wells, if any, do you find from a preponderance of the evidence would have constituted reasonable development of the lease estate in question prior to August 26, 1954?

"By the term 'reasonable development,' as used herein, is meant such development as a reasonably prudent operator would perform on the land under the same or similar circumstances.

"Answer *by stating the number of* wells, if any.

*Answer:* "Three wells."

The trial court which had carried defendants' and intervenor's motions for instructed verdict along with the case, granted such motions and entered judgment that plaintiffs take nothing as to any relief sought or prayed for by them in their trial petition against the defendants and intervenor. Plaintiffs' motion for mistrial and motion for new trial were overruled by the trial court. No findings of fact or conclusions of law were filed by the trial court. Plaintiffs have appealed.

Appellants by their 1st, 2d, 3rd and 5th points contend that (for various reasons stated in said points) the trial court erred in granting the motions for instructed verdict of defendants and intervenor. By their 4th point appellants contend in essence that the trial court erred in finding that no showing of proper notice was given of the non-development of the leases in question, etc. By their 6th point appellants contend in essence that the trial court erred in holding that the express terms in the leases in question relieved the defendants and intervenor of the responsibility of reasonably developing the leasehold estate in question. By their 7th point appellants contend in essence that the trial court erred in finding that intervenor Lyons had proceeded with an orderly development, etc. By their 8th point appellants contend in essence that the trial court erred in failing to grant a mistrial by reason of an alleged irreconcilable conflict between the findings of the jury in response to special issues No. 1 and No. 2.

Appellees by their counterpoints contend in essence: (1) That appellants wholly failed to prove that there had been a failure on appellees' part to reasonably develop the leasehold estate in question as a reasonable and prudent operator would have done under the same or similar circumstances; (2) that the written leases in question contained specific provisions which precluded the existence of implied covenants covering the same matters; (3) that appellants failed to comply with a provision in the leases with respect to written notice prior to bringing of suit, etc.; (4) that appellants offered no evidence that intervenor Lyons had not proceeded with an orderly and prudent development of the lease estate in question nor did appellants show themselves entitled to any relief; and (5) that the jury's findings to special issues Nos. 1 and 2 were not in conflict, etc.

On June 16, 1942, and on July 14, 1943, E. L. Burnett and B. H. Burnett, two of the plaintiffs, were the owners in fee simple

of 3,235 acres of land in Panola County, Texas. On those dates they entered into two oil, gas and mineral leases covering said 3,235 acres with R. Lacy. These leases were assigned to R. Lacy, Inc., and subsequently sublet to the defendant G. J. Hollandsworth. Portions of the basic leases were declared to be in producing gas units and three producing wells were completed on such portions prior to and during the month of November, 1946, and prior to the filing of this suit (the suit was filed August 26, 1954); that 2,109 acres of the basic 3,235 acres were not declared to be in gas or oil units and no wells had been drilled an any portion of said 2,109 acres prior to the filing of the suit. After the suit was filed, intervenor Lyons drilled one producing gas well on the 2,109 acres and then drilled a dry hole thereon.

Appellants in their brief state that the cause at bar was tried under the doctrine of Mitchell v. Perkins, Tex.Civ.App., 266 S.W.2d 451, and 153 Tex. 368, 268 S.W.2d 907, where similar issues were submitted as in the case at bar. In that case the issues were answered favorably to the plaintiffs Perkins to the effect that defendant Mitchell failed to develop the lease as a reasonable and prudent operator would have done, etc., that one well would constitute a reasonable development, etc., that plaintiff had been damaged by such failure to develop and that it was impossible to ascertain the amount of such damages. We quote from the Court of Civil Appeals opinion in said cause reported in 266 S.W.2d at page 455, as follows:

"This case was submitted to the jury upon the theory as stated in the case of Fort Worth Nat. Bank v. McLean, Tex.Civ.App., 245 S.W.2d 309, 310, where it is stated:

" 'From a careful study of the law in Texas, it is our opinion that a lessor, in order to secure a judgment requiring lessee to develop and decreeing a forfeiture upon a failure so to do must show the following: (a) that

his damage is uncertain and cannot be ascertained; (b) that the land had not been reasonably developed; (c) what constitutes reasonable development. Lido Oil Co. v. W. T. Waggoner Estate, Tex.Civ.App., 31 S.W.2d 154 (writ ref.); Rendleman v. Barlett, Tex.Civ.App., 21 S.W.2d 58.' "

In Summers on Oil and Gas, Sec. 398, it is stated:

· "In the absence of express stipulation creating a duty to proceed with drilling after the discovery of oil and gas in paying quantities, the law, to accomplish the manifest intention of the parties, in leases where the principal consideration is royalties to be paid the lessee, implies a duty on the part of the lessee to reasonably develop the premises. Where the duty for further development is created in general terms, the law implies that the lessee will proceed with diligence in drilling a sufficient number of wells to properly develop the land. In either case the measure of diligence as to the number, manner, time and location of wells to be drilled by the lessee is a question to be determined by the facts and circumstances of the particular case."

In W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27, 29, it is stated:

"Where a mining lease provided for oil or gas royalties, and fails to define the lessee's duty as regards development after discovery of paying oil or gas, the law implied the obligation from the lessee to continue the development and production of oil or gas with reasonable diligence."

In Warren v. Amerada Petroleum Corp'n, Tex.Civ.App., 211 S.W.2d 314, 317, writ ref., n. r. e., it is stated:

"In the absence of an express stipulation in leases, the courts will imply a

covenant to drill only in the event a reasonable, prudent operator would do so. But there is no room for an implied covenant where the lease contract itself makes the matter of development discretionary with lessee at his own will as was obviously the case in the original lease executed by Bell to lessee. The terms of that lease and the intention of the parties are clearly expressed in plain language and the courts will not undertake to write a new and different contract or to change the terms of one when the parties have stated their intentions clearly and in simple language. Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W. 2d 1166, 117 A.L.R. 61. The original lease above referred to contains an express covenant which precludes the application of any implied covenant for prudent development or for development within a reasonable time. Gulf Production Co. v. Kishi, 129 Tex. 487, 103 S.W.2d 965; Magnolia Petroleum Co. v. Page, Tex.Civ.App., 141 S.W.2d 691."

In Cowden v. General Crude Oil Co., Tex.Civ.App., 217 S.W.2d 109, 114, it is stated:

"It is thought under the implied covenant to reasonably develop the duty to drill on any particular portion of the leased area only arises when there is a reasonable prospect of developing paying production. Paying production in this sense is a production that would return a profit not only on the operation but a profit on the cost of drilling and the cost of the operation site."

In Senter v. Shanafelt, Tex.Civ.App., 233 S.W.2d 202, 205, it is stated:

"Since trial was to the court we only note contents of this objection because it amplifies the subject matter for our holding in this case, such being that the lease set out in appellees' pleadings does not contain an express covenant to develop the land, so if appellees had a cause of action against appellant for non-production, it is supplanted by an implied covenant to explore and develop the mineral resources, which under certain circumstances might entitle a lessor to forfeit a lease or to recover damages. Appellant's obligation under an implied covenant to develop is measured generally by the standard of reasonable diligence. Rhoads Drilling Co. v. Allred, 123 Tex. 229, 70 S.W.2d 576. As stated in 31–A Tex.Jur., p. 229, sec. 136:

" 'The final test in every instance is whether an ordinary prudent person, having his covenant to develop and the interests of both lessor and lessee in mind, would, under the same or similar circumstances, cause drilling to be done. * * * and that it is for the court or jury trying the case to determine whether, under all of the circumstances, including the cost of drilling and the probable profit therefrom, an ordinarily prudent person would have prosecuted development. The lessee is not required to continue in performance of the implied obligations unless continuance will be profitable, not only to his lessor, but also to him. * * *

" 'Since as just stated, the standard of compliance with the requirements of the implied covenant to develop is not absolute, but is dependent upon the facts of the particular case, it is difficult to state in precise terms what may be regarded as a reasonable development.'

"For announcement of the rule see W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W.2d 1166 [117 A. L.R. 61]; Gulf Production Co. v. Kishi, 129 Tex. 487, 103 S.W.2d 965;

Warren v. Amerada Petroleum Corp., Tex.Civ.App., 211 S.W.2d 314, error refused.

"We find there is insufficient evidence to support a judgment for appellees because it is not shown by competent evidence (1) that the lease as a whole was not reasonably developed; (2) that if additional wells would be drilled on said 40 acres that same would probably result in the production of oil or gas in paying quantities; (3) the evidence is insufficient to show damage by drainage from offset wells; (4) the evidence is insufficient to establish that appellant had abandoned the lease or any part thereof; (5) the only evidence in the record is to the effect that no wells have been drilled on said 40 acres, which alone will not support a cause of action for cancellation; (6) the evidence is insufficient to establish that an ordinary prudent person in the oil business would under the same or similar circumstances drill a well on said 40 acres; and (7) extent of our State spacing rules covering said field is not in the record."

It is undisputed in the record that there was production of gas on the leases in question prior to the expiration of the primary terms of said leases and it is also clear that under the plain terms of such leases such production kept the leases on the entire 3,235 acres in full force and effect thereafter and such leases were in full force and effect at the time of the trial and had not terminated.

One provision in the two leases in question provided as follows:

"In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent lands not owned by the Lessor and within three hundred fifty (350) feet of and draining said land, Lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances."

It is undisputed in the record that there were no such offset wells (as described in the above provision) ever drilled, nor was it necessary to drill offset wells, nor was there any evidence of any drainage in any respect of appellants' lands shown. It never therefore became necessary under said provision for appellees to ever drill any offset wells as outlined by said provision.

■ There were no other or additional express provisions in said leases providing for any express or specific manner of reasonable development of the remainder of the 3,235 acres (which might not be affected by offset wells as outlined in the specific provision above referred to) after initial discovery and production. Therefore, it follows that any obligation of appellees under an implied covenant to further develop the leases in question after initial discovery and production must be measured by the standard of reasonable diligence and under the rules and conditions outlined in Rhoads Drilling Co. v. Allred, 123 Tex. 229, 70 S.W.2d 576, supra, and the authorities hereinbefore referred to.

■ We have carefully reviewed the evidence in this cause and it is our considered opinion that the trial court correctly granted the motions for instructed verdict in question and correctly rendered judgment for defendants and intervenor in this cause, because there was no evidence of probative force in the cause to show that there was any failure on the part of appellees to develop the leasehold estates in question in the manner in which a reasonable and prudent operator would have done under the same or similar circumstances.

The witness Echols, a witness for plaintiffs, on direct examination was asked by plaintiffs' counsel the following question:

"Q. All right, based on all of this, and getting to the area in red here

that you have testified about (indicating) I will ask you, in your opinion, how many wells would it require to reasonably test and develop that area?"

and replied as follows:

"A. Am I to answer the question as to what my opinion would be, as to how many wells would be necessary to develop the acreage in controversy?

"Q. Yes, go ahead. A. I would say four to five wells would be necessary."

However there was no evidence as to what development would have been attempted by a reasonable and prudent operator. We quote further from the testimony of plaintiffs' witness Echols as follows:

"Q. How many wells would be required to reasonably develop the acreage you have outlined as being involved in this lawsuit? (Objection and ruling) A. The area which is colored solid red on that map represents 2,200, 2,300, or 2,400 acres, and at this time I will have to go along with the defense attorneys. I don't think myself or anyone else could sit down at this time and forecast foretell how many wells would be necessary to properly test or develop that area. It would almost be necessary to undertake such a program as that on a well-to-well basis.

"Q. Isn't it true that for that reason you can't form any basis of how many wells should or should not be drilled in this area? A. Will you state that again?

"Q. Is it not true that the probabilities can't be averaged out for the very reason you said, that you have to take the drill down there to find out if the oil is there in that area? A. You have to determine, yes, sir.

"Q. And there comes the question of economics, as to how many—

or how much money a person is willing to risk testing it out? A. That is correct."

The witness Echols further testified that it was impossible to determine how much productive area there was involved; that it was possible that one lens of the Travis Peak extended over the entire area and that one or more lenses of such formation might be found. That witness did not know how many dry holes would be found before the one lens of the formation would be found; that what you would find would be a gamble. The witness' theory of productivity in the area was explained to be that a dry hole condemns only the area a bit reaches or the immediate area around the well bore.

It was undisputed that three producing wells were drilled on the leasehold estates in question prior to August 26, 1954, the date the suit was filed. Plaintiffs-appellants sought to invoke the equitable jurisdiction of the court to require a reasonable development program or in the event of a failure to do so that a decree should be entered forfeiting or terminating the leasehold estate. It was undisputed that after the filing of the suit in question the intervenor Lyons had completed two wells on the 2,109 acres of the leasehold estate, one being completed as a producing gas well in June, 1955, and the other completed as a dry hole in August, 1955. Appellants' witness Echols was specifically asked on cross-examination what additional development a prudent operator would attempt under the existing circumstances and testified that he could not answer the question. The pertinent testimony is as follows:

"Q. If you were a reasonably prudent operator, do you think you would drill another well on there, or four or five more wells now? A. For an intelligent development program, I certainly would drill one more, and depending upon the information from that one, I would drill others.

"Q. There have been two wells drilled since this lawsuit was initiated; one is producing and one is a dry hole? A. That is correct.

"Q. Assuming that they are prudent operators, do you think they would drill another well after a dry hole and a producer? A. I can't answer that."

There was no evidence of probative force in the cause to show a reasonable expectation that oil or gas might be produced in paying quantities from the portion of the leasehold estate which was undeveloped and we think appellants failed to sustain their burden of proof that there had been a failure on appellees' part to reasonably develop the leasehold estate in the manner in which a prudent operator would have done under the same and similar circumstances. We think appellees' first counterpoint is well taken and we sustain same.

■ We are of the further opinion that the instructed verdict can also be sustained on the proposition that the record shows that appellants failed to comply with the notice provisions of the leases which provided in essence that as a condition precedent to any action lessor was required to notify lessee in writing, *setting out specifically in what respects lessee had breached the contract,* and lessee was given 60 days to meet or comply with the alleged breaches, etc. Plaintiff B. H. Burnett testified he wrote R. Lacy in 1953 that if they weren't going to do anything they (appellants) were going to lease the land the next day with a 16th override. From the facts stipulated in the case it appears G. J. Hollandsworth then owned the lease and that Mr. Lacy had been dead for several years. It further appears an assignment was made of the leasehold estate in question by R. Lacy to third parties, Hollandsworth's remote assignors, on December 2, 1943. Plaintiff E. L. Burnett testified by deposition that he had written a letter to Jack Price in the office of R. Lacy, Inc. This letter also has been carefully examined and it is our opinion that neither of these two letters constitutes notice within the meaning of the notice provision of the leases in question and that appellants failed to prove compliance with the notice provisions of the lease contracts.

We also hold that appellants wholly failed to prove and offered no evidence of probative force that intervenor Lyons had not proceeded with an orderly and prudent development of the leasehold estate as a reasonable and prudent operator would have done under the same or similar circumstances, nor did appellants show themselves entitled to any relief. Appellees' 4th counterpoint is sustained.

For the reasons above stated we hold that the trial court correctly instructed a verdict in favor of defendants and intervenor and correctly rendered judgment for defendants and intervenor. We therefore deem it unnecessary to discuss the further contentions and counter-contentions of the parties with respect to the correctness of the action of the trial court in sustaining the verdict and rendering the judgment for defendants and intervenor.

■ We have also carefully examined the record and have reached the conclusion that the jury's answers to special issues Nos. 1 and 2 are not in conflict and are sufficient to support a judgment for appellees because the answer to special issue No. 2 we think in the light of the whole record in the case constitutes a finding on the part of the jury that the three wells drilled on the leasehold estate prior to August 26, 1954, constituted a reasonable development of the entire 3,235 acres of the leased premises. The leases in question describe the entire 3,235 acres of the Burnett lands which leases were in evidence. The jury also had before them the plat of the entire Burnett lands depicting the three producing gas wells on said land completed prior to August 26, 1954. We think the testimony was developed by appellants as to the entire leasehold estate. We quote from the record as follows:

"Q. (By Mr. Lane) How many wells, in your opinion, would be required to develop the lands described in the two leases set out here in the controversy?

"Mr. Franklin Jones, Sr.: If the Court please, we renew our objections.

"Mr. Harris: Only that 2,100 acres shaded in red is the only thing involved in this lawsuit. The rest is not involved.

"The Court: All right, you will confine it to that.

"Mr. Lane: We are trying to cancel the lease describing about 3,200 acres of land. I am trying to get the overall picture to show how much it would take to develop all of it and how much they have drilled and how much there is left and hasn't been drilled. We think it goes to the merits of the case, because the leases cover the entire amount.

"The Court: You are asking about the entire acreage covered by the leases?

"Mr. Lane: Yes, sir.

"The Court: Is that what is before the court?

"Mr. Lane: What is before the Court: Have they reasonably developed it, and that includes in passing on it whether they have acted reasonably; and taken as a whole, the total amount under their lease and seeing what they have already done, the Court has to take into consideration the amount of development already had, and how much of the amount is required, and how much they have done.

"The Court: The Court will let you ask him the question you want to ask, with reference to the lands in dispute before the Court. If it involves the number of acres you say it does, you may go ahead. If it involves the 2,100 acres, then you will be restricted to that."

We think the jury was looking at the entire leasehold of 3,235 acres in answering special issues Nos. 1 and 2. Such a construction, we think, is clearly in harmony with the record in this cause and we think reasonably reconciles any apparent conflicts. In Perkins v. Mitchell, supra, 153 Tex. 368, 268 S.W.2d 907, 909, it is stated:

"While the facts in Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558, 562, are different, nevertheless the rule as stated forcibly applies here: 'It is the duty of the trial court to reconcile apparent conflicts in the jury's findings if this can be reasonably done in the light of the pleadings and the evidence, the manner in which the issues were submitted as a whole.' Also, Texas Indemnity Ins. Co. v. Bridges, Tex. Civ.App., 52 S.W.2d 1075, wr. ref.; Merritt v. King, Tex.Civ.App., 66 S.W. 2d 464, wr. ref."

We think the trial court correctly granted defendants' and intervenor's motions for instructed verdict and correctly rendered judgment for defendants and intervenor. We also think that there is no conflict in the jury verdict and that such verdict would support a judgment for defendants and intervenor. In any and all events we conclude that the trial court correctly rendered judgment for defendants and intervenor.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.