GULF PRODUCTION COMPANY V. K. KISHI ET AL.

No. 6794.   Decided April 14, 1937.
Rehearing overruled May 19, 1937.
(103 S. W., 2d Series, 965.)

*John E. Green, Jr., David Proctor,* and *Oswald S. Parker,* all of Houston, *W. E. Lea* and *V. H. Stark,* both of Orange, for appellant.

No obligation rested upon defendant oil company to drill wells in addition to those it had drilled upon the alleged existence of which obligation the verdict and judgment was solely based. Curry v. Texas Company, 8 S. W. (2d) 206; Galveston H. & S. A. Ry. Co. v. Johnson, 74 Texas 256, 11 S. W. 1113; St. Louis S. W. Ry. Co. v. Griffin, 106 Texas 477, 171 S. W. 703; 10 Tex. Jur., Sec. 184; Cole Pet. Co. v. United States Gas & Oil Co., 121 Texas 59, 41 S. W. (2d) 414.

*K. W. Stephenson* and *E. L. Reid,* both of Orange, for appellees.

The express stipulations as to drilling in the two leases, if they be of the same character and relate to the same subject as the implied covenant for reasonable development, do not state the full duty of the lessee to develop, but relate to the development within a specified time less than the entire time that the leases might endure and do not destroy the implied covenant for reasonable development during the remainder of the lease period. Duff v. Dubose, 27 S. W. (2d) 122; Leonard v. Prater, 36 S. W. (2d) 217; Key v. Big Sandy Oil & Gas Dev. Co., 212 S. W. 300.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Appellees recovered judgment against appellant for damages on account of appellant's failure, according to a jury's finding, to develop with reasonable diligence for the production of oil two tracts of land leased by appellees and their predecessors in title to appellant. The Court of Civil Appeals reversed the trial court's judgment and rendered judgment in favor of appellant but, pending action on motion for rehearing, certified to the Supreme Court the following question:

"Was appellees' petition, wherein they attempted to plead a cause of action based upon an implied covenant to drill wells in development of the leased premises in excess of the number agreed upon and stipulated for in the two leases, subject to appellant's general demurrer? In other words, since, by the express language of the two leases, provision was made for the development of the leased premises for oil by stipulating the number of wells to be drilled after the bringing in of the discovery well, and appellees plead affirmatively that all these wells had been drilled, were both leases, or either of them, subject to an implied covenant for additional development?"

The first of the two leases was executed December 23, 1919, for a recited consideration of $2,000.00, covers a tract of land containing about 150 acres and provides for the payment to lessors as royalties of one-eighth of the oil produced, one-eighth of the value of the casinghead gas, and $100.00 per annum for each well producing natural gas. It gives to the lessee the exclusive right to explore, drill, operate and produce on and from the leased land oil, gas and other minerals. There is no fixed term. In the first paragraph of the lease the lessee obligates itself to commence in good faith within ninety days from the date of the lease operations in the drilling of a well for oil and to prosecute such operations continuously until the well has been completed. The second and third paragraphs of the lease are as follows:

### "SECOND.

"If oil in paying quantities should not be found in the first well sunk on said premises, then the Company shall have the right within Sixty (60) days from the completion of said first well to commence and complete in a like manner a second well on said premises, and this right shall continue to additional wells, as long as said Company may desire, it commencing one of such additional wells at all times within 60 days after the completion of the preceding well, and this lease shall remain in force during all such operations. Failure to commence said second or additional wells within said 60 days shall automatically operate as a forfeiture of this lease.

## "THIRD.

"If oil shall be found on said premises in paying quantities, then unless lessee shall within 60 days from such finding of oil in paying quantities, begin the drilling of another well and unless lessee shall thereafter continue to drill other wells (beginning each additional well within 60 days from the completion of the last prior well), until a total of 12 wells, shall have been drilled on said premises, this lease shall on such failure at any time cease to be effective except as to, and the lessee shall on such failure lose its rights hereunder, except as to an area equal to five (5) acres for each producing well, which total area may be selected by lessee, both as to location and shape, and as to which this lease and lessee's rights hereunder, shall remain effective so long as production or explorations are continued by lessee on such retained area in accordance with the other terms of this lease; Lessee having expressly the right to drill as many additional wells, as it pleases on such retained area. It is expressly stated that such alternative right to drill 12 wells or to forfeit the lease with the exception of the retained area at any time during the drilling of such 12 wells, is at lessee's election."

The lease also contains a paragraph requiring the lessee to drill offset wells to producing wells that may be drilled within two hundred feet of any line of the leased premises.

The second lease, which covers a tract of land containing twenty acres, was executed March 12, 1920, for a consideration of $2,000.00, and provides for the payment of royalties of one-eighth of the oil produced from all pump wells, one-sixth of the oil produced from all flowing wells, one-eighth of the net proceeds of the sales of casinghead gas, and $200.00 per annum for each well producing gas only. It gives the lessee the exclusive rights of mining and operating for oil, gas or other minerals on the leased land. The term is for one year from the date of the lease and as long thereafter as the terms and conditions of the lease are complied with. The fourth and fifth paragraphs of the lease are as follows:

## "FOURTH.

"If no well or shaft is commenced on the premises on or before the 12th day of March, A. D. 1921, this lease shall terminate as to both parties, unless lessee on or before said date shall pay or tender to lessors, in the manner hereinafter provided, the sum of Two Thousand ($2000.00) Dollars, which payment or tender shall operate as a renewal to cover the privilege of deferring the commencement of a well, or shaft, for twelve

months (12) from said date. But in the absence of drilling or mining operations, this lease cannot be kept in force by such payments or tender for a longer total period than two (2) years from the date of this lease, and if lessee shall fail to make any such payments or tender when due, this lease shall terminate and both parties be released from all obligations hereunder.

"FIFTH.

"Lessor agrees that the cash payment or bonus received by him for this lease, and the other obligations of lessee to offset as expressed in the next succeeding paragraph, constitutes a valid and sufficient consideration to support each and every right and privilege conferred on the lessee by this instrument, including the option to the lessee to extend this lease from time to time, within the limitations and upon the terms herein-before stated. But, except as stated in the next succeeding paragraph hereof, the lessee shall not be obligated against its will to drill or otherwise conduct operations hereunder."

The sixth paragraph requires the drilling of offset wells whenever producing oil or gas wells are drilled on adjacent lands within two hundred feet of any line of the premises.

The fourteenth paragraph of the lease is as follows:

"FOURTEENTH.

"Should oil in paying quantities be found on the leased premises, then additional wells shall be drilled thereon until as many as four producing wells are drilled and such additional wells shall be drilled within not more than 90 days interval between the completion or abandonment of one and commencement of work on another and a failure to drill such additional wells shall terminate this lease as to all land except 5 acres in a square around each producing well, with the well in the center."

Appellant completed a producing well on the tract of land covered by the first lease on or about May 2, 1921, and there-after prior to January 20, 1927, it drilled to completion fifteen wells on that tract. All but three of such wells produced oil in large quantities. It completed its first producing well on the other tract, the twenty acres, on or about October 5, 1920, and thereafter prior to January 1, 1927, it completed on that tract six wells, all of which produced oil in large quantities. The foregoing facts as to the wells drilled by appellant are set out in appellees' petition and copies of the two leases are made parts of the petition and attached as exhibits. It is not alleged that the wells were not drilled successively within the time stipulated in the leases. The petition alleges that reasonable

diligence in the development of the first lease required the drilling of an average of fifteen wells per year from January 20, 1927, to the time when the suit was filed, and that reasonable diligence in the development of the other lease required the drilling of an average of five wells per year during that period. The prayer of the petition is for the recovery of damages in an amount equal to the royalties for the oil that would have been produced in the period from four years immediately preceding the filing of the suit to July 31, 1931, if the leased land had been developed with reasonable diligence.

1 We agree with the conclusion expressed by the Court of Civil Appeals that "the conditions of the leases prescribing the number of wells to be drilled by appellant necessarily excluded the implied covenant plead by appellees for further development, thereby denying as a matter of law appellees' contention that appellant rested under an implied covenant to drill wells in the development of the leased premises in excess of the number called for by the terms of the two leases."

2 The argument first presented by appellees in support of the implication of a covenant for further development by the drilling of additional wells after the completion of the wells expressly provided for by the terms of the leases proceeds from the premise that a covenant for reasonable development of land leased for the purpose of producing oil or gas is always implied, and that it always exists unless there is in the lease an express agreement that the lessee shall not use reasonable diligence to develop the premises or an express stipulation or covenant so absolutely irreconcilable with the implied covenant as to destroy it. The true rule is that the implied covenant arises only out of necessity and in the absence of an express stipulation with respect to development of the leased premises. When the parties have not exercised their right to make express provision for the development of the land after production is obtained, a covenant for reasonable development is implied in order that the purpose for which the lease is made, the production of oil and gas with payment of royalty to the lessor, may be accomplished.

Associate Justice GREENWOOD said in W. T. Waggoner Estate v. Sigler Oil Co., 118 Texas 509, 517, 520, 524, 19 S. W. (2d) 27: "Where a mining lease provided for oil or gas royalties *and failed to define the lessee's duty as regards development after discovery of paying oil or gas,* the law implied the obligation upon the lessee to continue the development of oil or gas with reasonable diligence." (Our italics.) In the same opinion he

further said: "A court should never override by implication the intention of the parties expressed in a binding writing"; and "Contractual implications are justified only on the ground of necessity."

Associate Justice PIERSON, in Freeport Sulphur Company v. American Sulphur Royalty Company of Texas, 117 Texas 439, 450, 6 S. W. (2d) 1039, 60 A. L. R. 890, hereinafter more fully discussed, introduced his discussion of the important subject of implied covenants with the statement that: "The court can not make contracts for parties and can declare implied covenants to exist only when there is a satisfactory basis in the express contracts of the parties *which makes it necessary to imply* certain duties and obligations in order to effect the purposes of the parties in the contracts made." (Our italics.)

In his valuable text book on Covenants Implied in Oil and Gas Leases (Sec. 45, p. 128) MERRILL thus states the reason and basis for the implication of a covenant for further development: "The implied covenant for further development is based by the courts upon the same foundation as that for exploration, namely, that the inducement for the making of the lease is the lessor's desire to have his land promptly explored and thoroughly and diligently developed, and that, therefore, *where the lease is silent upon the subject* it is impliedly agreed that the lessee shall be diligent in developing the premises if oil and gas is discovered in paying quantities." (Our italics.)

Similarly, the discussion in Mills and Willingham's Law of Oil and Gas of the covenant for reasonable development (Sec. 108, p. 154) begins with the following: "It is seldom that a lease provides for the number or the depth of the wells that shall be drilled after discovery of oil or gas in paying quantities. *When it does, however, the express covenant is binding upon the question of diligence of operation and no further covenant will be implied, in the absence of drainage.*" (Our italics.)

So also SUMMERS, in his statement of the rule as to the implied covenant for development, conditions it upon the absence of an express stipulation. He says: "*In the absence of express stipulation* creating a duty to proceed with the drilling after the discovery of oil and gas in paying quantities, the law, to accomplish the manifest intention of the parties in leases where the principal consideration is royalties to be paid the lessor, implies a duty on the part of the lessee to develop the premises." (Our italics; Summers' Oil and Gas, Sec. 129, p. 414.)

It follows that the existence of an implied covenant for development is not to be assumed and that it becomes necessary first to examine the leases under consideration to ascertain

whether the parties have expressly agreed or stipulated as to the number of wells to be drilled in the development of the premises.

The first two paragraphs of the first lease relate to exploration. The lessee binds itself to begin operations for the drilling of the first well within ninety days from the date of the lease. In the event oil in paying quantities is not found in the first well, the lessee is given the right to drill additional test wells, commencing each such additional well within sixty days from the completion of the preceding well, with provision that failure to commence the second or additional wells within such time shall automatically operate as a forfeiture of the lease. Thus the parties expressly contracted with respect to the drilling of wells for exploration and there was no field for the operation of an implied agreement for the beginning of an exploratory well or wells. Merrill's Covenants Implied in Oil and Gas Leases, Sec. 10, pp. 38-39, Secs. 15-18, pp. 49-61, Sec. 21, pp. 63-68. Mills and Willingham's Law of Oil and Gas, Sec. 107, p. 153; Summers' Oil and Gas, Sec. 127, pp. 394-395.

The agreement for development after the discovery of oil in paying quantities is found in the third paragraph. The lessee is required, in order to prevent the termination of its rights under the lease, to begin the drilling of another well within sixty days after the discovery of oil and thereafter to continue to drill additional wells (beginning each additional well within sixty days after the completion of the last prior well) until a total of twelve wells shall have been drilled on the leased premises. Nothing is said as to the drilling of other wells after the completion of the twelve.

In the lease covering the twenty acre tract express provision is also made for the drilling of exploratory wells. The fourteenth paragraph of the lease provides that if oil in paying quantities is found on the leased premises, additional wells shall be drilled until as many as four producing wells are drilled, the additional wells to be begun with not more than ninety days interval between the completion or abandonment of one and commencement of work on another, and that failure to drill such additional wells shall terminate the lease.

3  It is our opinion that the parties expressed, in the third paragraph of the first lease and in the fourteenth paragraph of the second lease, their agreements and intentions as to the number of wells required to be drilled by the lessee in the development of the premises covered by the two leases and as to the time when the wells should be drilled, in other words, that these two paragraphs contain the agreements of the parties

upon the subject of development and the subject of diligence of development. This being true, there is no necessity for the implication of a covenant for development with reasonable diligence. To imply such covenant would be to make an agreement for the parties upon a subject about which they have in their written contracts expressly agreed.

The conclusion that there is no implication for further development by the drilling of wells in excess of the number stipulated in the leases is directly supported by Freeport Sulphur Co. v. American Sulphur Royalty Company of Texas, 117 Texas 439, 6 S. W. (2d) 1039, 60 A. L. R. 890. Several tracts of land were conveyed for development and operation for sulphur with provision for the payment of royalty to the grantors. The deeds and a contract expressly provided that the grantees should within a certain time erect and put in operation on the land a complete plant of one unit in accordance with a certain process. The plant was built within the time specified and other plants were later erected and put in operation, four in all, as the demands of the market required. The owner of the royalty sued for damages for the failure of the grantees and their assigns to develop and operate the sulphur mines in good faith and with reasonable diligence, the plaintiff making the contention that there was an implied covenant for the full development of the property. It was held that no implied covenant for the full and general development of the property existed "for the reason that the provision for the erection of a one-unit plant was an express provision for development and negatives an implication of development." It is apparent that the one plant for which provision was made in the deeds and contract was inadequate for the reasonable development of all of the property. The grantees built and operated three other plants, and the court's opinion assumed that the erection and operation of the four plants was not full development. Nevertheless it was held that there was no implied covenant for further development, because the express stipulation upon the matter of development, the agreement to erect and put in operation one plant, negatived an implication of development.

So here, if it be conceded that the drilling of the fifteen wells on the one tract and the six wells on the other tract did not constitute reasonable development of all of the leased land, still there was no implied obligation for further development, because by the terms of the leases the parties expressly stipulated upon the subject of development. They deemed it advisable to set out in the leases the number of wells required to be drilled in the development of the property after the discovery of oil

instead of leaving that matter to implication and to ultimate decision by a court or jury. This having been done, the obligations with respect to development imposed by the leases are to be determined by the express stipulations of the leases. For other authorities supporting the conclusion expressed see: Stanolind Oil & Gas Company v. Christian, 83 S. W. (2d) 408, 410 (application for writ of error refused); Stoddard v. Emery, 128 Pa. 436, 18 Atl. 339; Becker v. Submarine Oil Company, 55 Cal. App. 698, 204 Pac. 245; Harris v. Ohio Oil Company, 57 Ohio St. 118, 48 N. E. 502, 505; Merrill's Covenants Implied in Oil and Gas Leases, Sec. 43, p. 122; Mills and Willingham's Law of Oil and Gas, Sec. 108, p. 154; Summers' Oil and Gas, Sec. 129, p. 414; 12 Tex. Jur., Sec. 7, p. 13; 7 R. C. L., Secs. 10-11, p. 1093.

4 The first proposition formally presented by appellees in their brief is that the express stipulations as to drilling wells relate to the estate granted, and not to the same subject as that to which the implied covenant for development relates, and therefore do not exclude the implied covenant. The proposition confuses the remedy or the result of failure to develop with the subject matter. The subject of the express stipulations as to the drilling of wells is development. The parties agreed upon the number of wells that the lessee would be required to drill and made performance more certain by stipulating that the lessee's failure to drill the wells should work the termination of its estate. The fact that the remedy or the penalty for noncompliance with the express stipulations of the leases is termination rather than liability for damages does not change the subject of the stipulations. They still relate to development. An express covenant may be, and often is, accompanied by a condition subsequent giving a right to terminate the estate of the covenantor on its breach. Tiffany's Real Property, (2d ed.) Sec. 76, pp. 264-265. A covenant for development, express or implied, may be by express language made a condition as well as a covenant. Brewster v. Lanyon Zinc Co., (U. S. C. C. A.) 140 Fed. 801, 812. It was held in Cole Petroleum Co. v. United States Oil and Gas. Co., 121 Texas 59, 41 S. W. (2d) 414, 86 A. L. R. 719, that the implied covenant for development came within the meaning of an express stipulation for forfeiture of an assignment of an oil and gas lease for failure of the assignee to fulfill any of the covenants of the agreement. Thus a condition subsequent may be attached even to an implied covenant for development or, differently stated, an implied covenant for development may be made by express agreement a condition as well as a covenant, but no change is thereby made in the

subject to which the covenant relates, and it remains a covenant to the performance of which the covenantor is bound until the termination of the estate is caused by a breach. Similarly, the stipulations in the leases in the instant case, whether they be classified as special limitations, conditional limitations or conditions subsequent, represent the agreement of the parties with respect to development and the subject to which they relate is development, the drilling of wells.

5   Because of the peculiar nature of the estate created by an oil and gas lease the implied covenant for development is not a true covenant, that is, it does not impose a continuing, enforceable duty. The lessee may elect to permit the lease to terminate by ceasing to devote the premises to the purpose of oil and gas exploration, development and production and thereby rid himself of the implied obligation, but the obligation continues as long as the lease is kept alive. See the valuable article by A. W. WALKER, JR., on The Nature of the Property Interests Created by an Oil and Gas Lease in Texas (11 Texas Law Review, pp. 408-409). The express stipulations for development contained in the leases and the covenant for development implied in the absence of express stipulation have in a practical sense the same purpose, the development of the leased premises, and the obligation imposed by the express stipulations, like that implied, exists only while the lease is kept alive. For this additional reason the express stipulations and the implied obligation can not be said to relate to different subjects.

6   Appellees' second proposition argues, in an effort to create a field for the operation of an implied covenant, that the express stipulations as to drilling wells do not state fully the duty of the lessee to develop but relate exclusively to development to be done within a specified period less than the entire term, and that there is an implied covenant for reasonable development during the remainder of the period for which the leases may endure. We find nothing in the leases suggesting that the express stipulations do not state fully the lessee's duty as to development. They specify the number of wells that must be drilled in the development of the property. The provisions that each well must·be commenced within sixty or ninety days from the completion of the last prior well were intended to accomplish the diligent drilling of the wells required and not to divide the terms of the leases into separate periods of development.

7   Appellees' third proposition, that the stipulations for the drilling of the wells are conditions precedent to the acquisition by the lessee of new and enlarged estates as to which there are

implied covenants for reasonable development, is untenable for the reason that it presents an erroneous conception of the nature of the estate created by the leases. It is settled in this State that an oil and gas lease, like those here under consideration, operates presently to invest the lessee with a determinable fee in the oil and gas in place. The Texas Company v. Davis, 113 Texas 321, 254 S. W. 304, 255 S. W. 601; Stephens County v. Mid-Kansas Oil and Gas Company, 113 Texas 160, 254 S. W. 290, 29 L. R. A. 566; W. T. Waggoner Estate v. Sigler Oil Company, 118 Texas 509, 19 S. W. (2d) 27; Sheffield v. Hogg, 124 Texas 290, 77 S. W. (2d) 1021, 80 S. W. (2d) 741. The express provisions of the leases that the rights or estates of the lessee shall terminate on its failure to drill the wells are limitations upon the duration of the estates created by the leases. They are not conditions precedent to the acquisition of new or different estates. They are special limitations, sometimes called conditional limitations, by which, upon the happening of the contingency, the estate may come to an end before the regular end of the term. Tiffany's Real Property, (2d ed.) Sec. 59(b), p. 208; W. T. Waggoner Estate v. Sigler Oil Co., 118 Texas 509, 519, 19 S. W. (2d) 27. No new estates arose or vested upon the completion of the wells stipulated to be drilled in the third paragraph of the first lease and in the fourteenth paragraph of the second lease. The drilling of the wells freed the estates created by the leases from the limitations prescribed in those paragraphs.

8  Answering the question certified, it is our opinion that appellees' petition, in so far as it attempted to plead an implied covenant to drill wells in development of the leased premises in excess of the number of wells agreed upon and stipulated for in the two leases, was subject to appellant's demurrer. Since, by the express language of the two leases, provision was made for the development of the leased premises for oil by stipulating the number of wells to be drilled after the bringing in of the discovery well, and appellees pleaded affirmatively that all such wells had been drilled, the leases were not subject to implied covenants for reasonable development.

Opinion adopted by the Supreme Court April 14, 1937.

Rehearing overruled May 19, 1937.