SHUTTLE OIL CORPORATION et al.,
Appellants,

v.

Jake L. HAMON et al., Appellees.

No. 7311.

Court of Civil Appeals of Texas,
Beaumont.

Feb. 24, 1972.

Rehearing Denied March 16, 1972.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellants.

Roach & Robertson, Dallas, for appellees.

STEPHENSON, Justice.

Shuttle Oil Corporation and Rip C. Underwood, as plaintiffs, brought this action against Jake L. Hamon, as defendant in trespass to try title to a certain oil, gas and mineral lease, and in the alternative, for a declaratory judgment holding such lease had terminated because of abandonment and for an accounting of the proceeds from the production of oil from such lease after the termination of the assignment. Trial was before the court and judgment was rendered for defendant. There are no findings of fact or conclusions of law. The parties will be referred to here as they were in the trial court.

The facts are somewhat involved and a review is necessary in order to understand the contentions made. Most of the facts are undisputed and are covered by a stipulation entered into by the parties. In 1932, two mineral leases were executed covering a section of land in Duval County, Texas. These two leases have been maintained in full force and effect at all times by production of oil from depths above 3,000 feet below the surface. Such leases, insofar as they cover formations below 3,000 feet from the surface, became vested in the Daube Interests.

This suit concerns the mineral leasehold estate below the 3,000 foot level. It is agreed that the Daube Interests are the common source of title to such estate. In 1952, the Daube Interests assigned such estate below the 3,000 foot level to two individuals and it is under this instrument that defendant makes his claim. A reservation of $\frac{1}{16}$ of $\frac{7}{8}$ overriding royalty was made in the assignment by the Daube Interests. Such assignment required the drilling of a well upon one of the quarter sections within 120 days to a depth of at least 8,250 feet. The instrument provided that upon failure to comply with this requirement, the assignment would immediately termi-

nate. It further provided that if a second well was not commenced within six months after the completion of the first well, the assignment would terminate as to all of the sections except as to the first quarter section upon which the first well was drilled. Similar provisions were made as to a third and fourth well and the third and fourth quarter sections.

Defendant drilled a well to 9,006 feet within the 120 day period in 1952 upon the southwest quarter of the section and it was completed as a dry hole. Nothing further was done toward drilling other wells and it is agreed the assignment terminated as to the other three quarters. We have in issue before us only the southwest quarter section in which the dry hole was drilled.

In January 1970, plaintiffs acquired from the Daube Interests an assignment of whatever interest they owned in this quarter section. In February 1970, defendant reentered his old hole and completed it as a producer. Defendant did not physically do anything to the well after November 30, 1952 (dry hole completion date), until February 24, 1970 (reentry date).

■ Plaintiffs' first and primary point of error is that the trial court erred in not holding defendant's interest in the leasehold estate terminated by virtue of an implied limitation requiring use of such estate for the purpose for which it was granted. Plaintiffs argue that there is implied into the assignment under which defendant claims, a special limitation to the effect that the interest conveyed shall endure only so long as it is used for the purpose of exploring for or production of oil, gas and other minerals. This point is overruled.

It must be kept in mind when considering the problems involved in this case, that we have an assignment and not an original lease. There is no provision in this assignment for a fixed term or for a continua-tion of the assignment only so long as production continues. It expressly provides for termination only for failure to drill the well. It is admitted that the assignment in question contains no express provision requiring the well to be completed for production or that continued production or operation is necessary for perpetuation of the interest assigned.

We have concluded the language used in this assignment, considering the instrument as a whole, indicated the parties intended the defendant be required to do no more than drill a well to the prescribed depth within the prescribed time in order to earn the leasehold interest conveyed in such assignment. There is nothing in the assignment to indicate the express provisions as to drilling did not fully state the duty of the assignee. *Gulf Production Co. v. Kishi,* 129 Tex. 487, 103 S.W.2d 965 (1937). This conclusion is reached by considering the things said as well as the things not said.

The granting clause in the assignment reads as follows:

". . . bargain, sell, transfer, assign and convey *all of the rights, title and interest of the original lessees and present owners in and to said lease and leasehold estates and rights thereunder insofar as they cover the lands above described,* but to depths only below 3,000 feet beneath the surface." (emphasis added)

The assignment provides for the commencement of a second well within six months after the completion of the first well *"as a dry hole or producer."* If the second well is not so commenced and drilled, the assignment will terminate *"except as to the quarter section upon which the first well has been drilled as provided in (1) above."* (emphasis added) Similar provisions are made for a third and fourth well.

The parties to the assignment have given no indication that production was required to keep the interest alive. Even the term a "completed well" (which was not used here) does not require a producing well, but only that a well be drilled to the depth required or contemplated. In fact, the only reference made in the assignment to "a commercial producer" was the requirement that if the well was completed as a producer, assignee would pay the costs and expense of equipping and completing the well.

Plaintiffs make a special point in their briefs that they are not relying upon an implied covenant to develop the leasehold interest involved, and attempt to distinguish their position as one of "non-user." Yet, plaintiffs fail to demonstrate to this court how defendant could have complied with their contended requirements, other than to continue to develop the lease. We fail to see any real distinction, and think this case is controlled by W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27 (1929). In that case a lease was for a primary term of five years and so long thereafter as production continued on a 3,000 acre tract. Only two wells were drilled, both of which were producing, and the Supreme Court held that the lessee had breached an implied obligation to the mineral owners for further reasonable development. The mineral owners contended the implied covenant to reasonably develop was a limitation upon the leasehold estate, but the court held such implied obligation was a covenant and not a condition of limitation and the mineral owners' cause of action would be one for damages. See that opinion for the many cases cited. See also, Henshaw v. Texas Natural Resources Foundation, 147 Tex. 436, 216 S.W.2d 566 (1949).

No one has contended the assignment in question is ambiguous, and we agree with the parties that it is not. However, in the event it should be held that the assignment is ambiguous, we are obligated to follow the rule restated by the Supreme Court of Texas in Henshaw v. Texas Natural Resources Foundation, supra, that if there is any doubt about the meaning of the various terms of the assignment, we must consider the interpretation placed upon them by the parties themselves.

Alton Clements testified to the following: He had been the Daube Interests landman for the past thirty-five years and is familiar with the assignment in question. After defendant drilled the dry hole, the Daube Interests did not notify defendant that he had not done everything required of him by the assignment. Defendant did not notify the Daube Interests that he intended to abandon anything, even though the assignment provided for thirty days' written notice of an intention to abandon the leasehold rights. The Daube Interests took the position that the other three quarters of the section reverted to them when defendant did not drill additional wells. That he, Clements, participated in the transaction resulting in the assignment to plaintiffs. He told the person representing plaintiffs with whom he was dealing, that the Daube Interests owned three quarters of the section, which was all of the section except the southwest quarter which had been earned by defendant. That plaintiffs obtained a title opinion from their own attorney before paying any money to the Daube Interests. (A copy of such title opinion admitted in evidence shows plaintiffs' attorney informed plaintiffs that defendant had earned and owned the leasehold estate in the southwest quarter section and required an assignment from defendant to cure the title.) The assignment from the Daube Interests dated January 2, 1970, under which plaintiffs make their claim, was made without warranty of title.

■ If this case be placed strictly upon the issue of abandonment, we reach the same result. This case being tried before the court, in the absence of findings of

fact and conclusions of law, there is an implied finding against plaintiffs on the issue of abandonment. We have concluded plaintiffs did no more than raise a question of fact for the court to determine, which it did adversely to plaintiffs by rendering judgment for defendant.

There is considerable doubt that a leasehold interest may be lost by abandonment under the present authorities in this state. See article by A. W. Walker, Jr., "The Nature of the Property Interests Created by an Oil and Gas Lease in Texas," 7 Texas Law Rev. 539, 593 (1929). However, under the older authorities, the law was settled that there must be both an intention to abandon and an actual relinquishment of the enterprise. See Leonard v. Prater, 36 S.W.2d 216 (Tex.Com.App.1931, holdings approved), and Hines v. Hanover Co., 23 S.W.2d 289 (Tex.Com.App.1930).

Some of the testimony in this record supporting an implied finding of no abandonment: The surface casing and the drilling mud were left in the old hole to facilitate reentry and additional operations. Defendant set up appropriate ownership records among his files at the time he acquired this leasehold interest. Such records showed the amount of leasehold costs, among other things. Entries were made in such records when the three quarters of the section reverted to the Daube Interests. That such records were currently maintained through the years, showing a check on the shallow production and the payment of ad valorem taxes. In 1959, defendant asserted his ownership when approached by a third person. Defendant testified that he had never abandoned or intended to relinquish his title.

We find the other points of error to be without merit and they are overruled.

Affirmed.