Cloyce F. CHANDLER, Jr., et al., Appellants,

v.

Paul W. DRUMMET, Appellee.

No. 16892.

Court of Civil Appeals of Texas, 1st District, Houston.

June 30, 1977.

Rehearing Denied Oct. 6, 1977.

Sears & Burns, David F. Beale, Sonfield & Sonfield, Houston, for appellants.

Boswell, O'Toole, Davis & Pickering, Donald R. Hallmark, Houston, for appellee Paul W. Drummet.

Schlanger, Cook, Cohn & Mills, Joel W. Cook, Houston, for appellee Houston Lighting & Power.

COLEMAN, Chief Justice.

This is a suit to remove the cloud from the title to land. The two principal issues are (1) whether a certain oil and gas lease has terminated, and (2) if not, whether the defendant, Cloyce F. Chandler is the owner of an interest in said oil and gas lease.

The case was submitted to a jury on one special issue, in response to which the jury found that it was an intent of the parties to the Drummet-Bacarisse lease that it would terminate sixty days after the completion of a dry hole if additional drilling or reworking operations could not be done within said period. Judgment was entered finding that the oil and gas lease had terminated and that the interest claimed by the defendant Cloyce F. Chandler, Jr. under the Drummet-Bacarisse oil and gas lease dated April 28, 1961, recorded in Vol. 1346, P. 492 of the Contract Records of Harris County, Texas, was null and void.

On April 28, 1961, Paul W. Drummet executed an oil, gas and mineral lease on a tract of land in Harris County to Sidney L. Bacarisse. Paragraph 1 of the lease reads:

"Lessor, in consideration of $10.00 in hand paid . . . and of the royalties herein provided and of the agreements of the lessee herein contained, hereby grants, leases and lets exclusively unto lessee for the purpose of investigating, exploring, prospecting, drilling, mining and operating for and producing oil, gas, and all other minerals, . . . the following described land . . ."

Following the description of the land leased this paragraph was typed in a blank space on the printed form:

"Notwithstanding any other provisions in this Lease, if operations for the drilling of a test well for oil or gas is not commenced on this tract of land or on the George B. Meyer & Frank K. Meyer 527 acre tract of land, located on the adjoining survey in the W.C.R.R. Survey Abstract # 934 on or before 120 days from this date, this Lease shall terminate as to both parties.

"Should the test well commence on or before 120 days from this date on either tract this Lease shall become valid and in force."

Paragraph 2:

"Subject to the other provisions herein contained, this lease shall remain in force for a term of ten (10) years from this date (called "primary term"), and as long thereafter as oil, gas, or other mineral is produced from said land."

The third paragraph of the lease sets out the royalties to be paid to the lessor. Paragraph 4 reads:

"If operations for drilling or mining are not commenced on said land on or before 120 days from this date, this lease shall terminate as to both parties."

The printed provisions of paragraph 4 providing for delay rentals were struck out.

Paragraph 5 of the lease reads:

"If, prior to discovery of oil, gas, or other minerals on said land, lessee should drill and abandon a dry hole or holes thereon, or if, after discovery of oil, gas, or other minerals, the production thereof should cease from any cause, this lease shall not terminate if lessee commences additional drilling or reworking operations within sixty (60) days thereafter, or (if it be within the primary term) commences or resumes the payment or tender of rentals on or before the rental paying date next ensuing after the expiration of three (3) months from date of completion and abandonment of said dry hole or holes or the cessation of production. . . ."

Other provisions of the lease have no bearing on the problems presented in this case. Drummet relies on the language found in paragraph 5 as creating an obligation for additional drilling within sixty days from the completion of any dry hole during the primary term. Chandler contends that it does not create an express obligation to so drill because it is stated in the negative, i. e., "it shall not terminate if . . ." The lease nowhere expressly provides that the lease shall terminate unless additional drilling operations are undertaken.

In *Texas Co. v. Davis*, 113 Tex. 321, 254 S.W. 304 (1923), the supreme court considered an oil and gas lease containing the following provisions:

"To have and to hold the above-described premises, unto the said parties of the second part, their heirs and assigns, upon the following conditions: In case operations for either the drilling of a well for oil, gas or other minerals, is not commenced and prosecuted with due diligence within two years from this date, then this grant shall immediately become null and void as to both parties; provided that said second party may prevent such forfeiture from year to year by paying to the first party the sum of $10.00 per year, until such well is commenced or until shipments from such mine have begun, and it is agreed that the completion of a well shall operate as a full liquidation of all rental under this provision during the remainder of the term of this lease, . . . In case the parties of the second part should bore and discover either oil or other minerals, then in that event this grant, incumbrance or conveyance shall be in full force and effect for twenty-five years from the time of the discovery of

said product, and as much longer as oil, water, gas or other minerals can be produced in paying quantities thereon. . ."

The opinion in *Texas Co. v. Davis*, reflects that within the two year period specified in the lease the lessee drilled four oil wells, one of which produced for a time. The lease was dated February 23, 1901. The fourth well was completed in July, 1904 when all drilling equipment and machinery was removed from the premises. After the completion of the fourth well no exploration or production was undertaken.

After considering these facts the court said:

"The Court of Civil Appeals concluded that the wells drilled by Underwood's assigns liquidated all rentals and kept the grant in effect for 25 years. We think the $10 per year payment clause had no relation to anything save prevention of a forfeiture from failure to drill with diligence, within two years from the date of the grant. After a well was drilled, with the required diligence, the grantee and his assigns were invested with title, freed of the express condition subsequent, to the oil, gas and other minerals, and incidental rights, for 25 years from the time of discovery of the oil, gas, or other minerals, and as much longer as same might be produced from the 76½ acres of land in paying quantities. But such title vested only for the purpose specified in the writing through which the title was derived."

\*    \*    \*    \*    \*    \*

"We are convinced: First, that Underwood and his assigns took only a determinable fee under the grant from Arnold and wife, which terminated long ago; and, second, that abandonment of the purpose for which Underwood and his assigns were invested with their title and rights in and to the minerals and land was necessarily fatal to the maintenance of the suit of defendants in error. The evidence is undisputed, which conclusively shows that those under whom defendants in error claim entirely and permanently stopped and abandoned the exploration and development of the 76½ acres and the production of minerals thereon. Their estate at once terminated without the need of a conveyance."

In the fifth installment of an often cited law review article on The Nature of the Property Interest Created by an Oil and Gas Lease in Texas, by Professor A. W. Walker, Jr., appearing in 11 Texas Law Review 399, it is stated that the law is well settled today that the lessee in any oil and gas lease assumes a number of implied obligations to the lessor with reference to the operation and development of the leasehold premises, in the absence of express provisions relieving the lessee of these obligations. One of the implied covenants is the covenant to develop the premises with reasonable diligence. (p. 401) Professor Walker also states (p. 408) that the peculiar nature of these implied covenants in Texas results from the holding of our courts that the devotion of the leased premises to the purpose of oil and gas exploration, development, and production is a special limitation upon the lessee's estate even though not expressly stated as a special limitation in the lease. Professor Walker states that the implied covenant to develop with reasonable diligence exists in all situations where the lease is being preserved other than by the payment of delayed rentals. (p. 411) With reference to a case where the lease contains no delayed rentals clause, but provides for drilling of an initial well, Professor Walker says:

"A more interesting situation develops when the initial well provided for in the lease is completed as a dry hole before the exploratory term has expired. Under the Texas law that the lease will terminate when the premises are not devoted to the limitational purpose, except where a substitute method of preserving the lease by the payment of rentals is available, it is clear that the lease in this situation would terminate in the absence of further development. . . ." (p. 414)

■ The Supreme Court of Texas in *Fox v. Thoreson*, 398 S.W.2d 88 (Tex.1966), has

reaffirmed the existence in an ordinary oil and gas lease which does not contain provisions to the contrary, of a special limitation imposed by law which would terminate the estate upon cessation of use of the estate for its intended purpose, citing *Texas Co. v. Davis*, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601 (1923); and *Stephens County v. Mid-Kansas Oil & Gas Co.*, 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566 (1923).

■ The evidence in this case shows conclusively that a test well was commenced on the premises described in the lease within the time required by the lease. Therefore, as provided in paragraph 2 of the lease, it would remain in force for a term of ten years and as long thereafter as oil or gas is produced from said land "subject to the other provisions herein contained". Nevertheless the special limitation imposed by law would terminate the estate upon abandonment or cessation of use of the estate for its intended purpose. As we construe the terms of the lease, paragraph 5 was inserted to remove the uncertainty which might arise upon the completion of this first well as a dry hole. It provided that the lease would not terminate if the lessee commenced additional drilling or reworking operation within sixty days after the completion of the dry hole. This provision is not a special limitation, rather it is a savings clause. It reflects the agreement of the parties as to what constitutes a reasonable period of time in which additional drilling operations must be undertaken after the completion of a dry hole in order to save the lease from termination by reason of the implied limitation imposed by law on the cessation of use of the estate for its intended purpose.

The evidence establishes that additional drilling operations were not commenced within the sixty day period. It follows, therefore, that an unreasonable length of time elapsed between the abandonment of the nonproducing well and the commencement of operations upon another exploratory well. The lease terminated by reason of the implied special limitation since there is no language in the lease which would excuse lessee from his obligation to develop the lease with reasonable diligence. *W. T. Waggoner Estate v. Sigler Oil Co.*, 118 Tex. 509, 19 S.W.2d 27 (1929); *Gulf Production Co. v. Kishi*, 129 Tex. 487, 103 S.W.2d 965 (1937); *Chapman v. Ellis*, 254 S.W. 615 (Tex.Civ.App.—Beaumont 1923, writ dism'd).

A number of points of error have been raised by the appellants and they have been carefully considered. Since we have held that as a matter of law the lease terminated sixty days after completion of the well as a dry hole these points become immaterial.

The judgment is affirmed.