UNION PACIFIC RESOURCES GROUP, INC., Union Pacific Resources Company, Duke Energy L.P., f/k/a Union Pacific Fuels, Inc., Union Pacific Austin Chalk Company, and Union Pacific Oil and Gas Company, Appellants,

v.

Russell NEINAST, W.J. Bowen, Jr., and Vilette Finke, Appellees.

No. 01–00–00006–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 20, 2001.

Opinion Dissenting to Denial of En Banc Reconsideration March 7, 2002.

W. Stephen Rodgers, Bryan, Robert E.
Davis, Dallas, Neil D. Kelly, Houston,
Mary Ann Joerres, Jeffrey Charles King,
Dallas, Andrew Harper Estes, Midland, C.
Kelvin Adams, Bryan, David M. Gunn,
Houston, for appellants.

R.Hal Moorman, Brenham, Robert R.
Herring, James J. Ormiston, Levon G.
Hovnatanian, Houston, for appellees.

Panel consists of Justices COHEN,
TAFT, and PRICE.*

## OPINION

TAFT, Justice.

This is an interlocutory appeal from an
order certifying a class of plaintiffs, which
class includes appellees, Russell Neinast,
W.J. Bowen, Jr., and Villette Finke, under
rule 42 of the Texas Rules of Civil Proce-
dure. Tex. R. Civ. P. 42; Tex. Civ. Prac. &
Rem.Code Ann. § 5.014(a)(3) (Vernon Supp.
2001). The trial court defined the class as

(1) all persons and entities who own or
owned royalty interests under leases
located in the State of Texas (except
for those in Crockett and Sutton
counties as to claims accruing on or
before March 31, 1999),

(2) where UPRC,[1] UPOG,[2] or UP Aus-
tin Chalk[3] is the lessee,

(3) which provide for payment of royal-
ties on natural gas production on an

---

* The Honorable Frank C. Price, former Justice,
Court of Appeals, First District of Texas at
Houston, participating by assignment.

1. Appellant Union Pacific Resources Compa-
ny.

2. Appellant Union Pacific Oil and Gas Com-
pany.

3. Appellant Union Pacific Austin Chalk Com-
pany.

amount realized/net proceeds basis or a market value/market price basis,

(4) and from which UPRC, UPOG, or UP Austin Chalk have produced natural gas (including natural gas liquids) that was directly or indirectly sold or transferred to UP Fuels for marketing or resale,

(5) during the period April 1994 through the present (the class).

We address whether the trial court abused its discretion in certifying the class. We reverse and remand to the trial court with instructions to decertify the class.

## Facts

Appellant Union Pacific Resources Group (UPRG) is a gas producer. UPRG acquires mineral interests in land, drills wells on that land, and produces gas. Individual owners of royalty interests convey mineral interests to the producer through leases. The producer, in turn, produces and markets the gas and then pays a royalty to the owner. The class certified consists of an estimated 30,000 individual royalty owners, who conveyed lease interests under more than 26,000 mineral leases, under which appellants, UPRG, UPRC, Duke Energy L.P., f/k/a Union Pacific Fuels, Inc., UP Austin Chalk, and UPOG, pay royalties. Because each lease is individually negotiated, each varies as to the lessor's and lessee's rights and duties. A random sample of 1000 leases yielded 150 variations concerning these rights and duties.

For several years, UPRC had two departments. One department produced gas; the other marketed it. In 1987, UPRC created a wholly owned subsidiary, Union Pacific Fuels, Inc. (UP Fuels), to market the gas UPRC produced. UP Fuels purchased gas produced by UPRC and then sold the gas to independent third-

party purchasers. On March 31, 1999, UP Fuels was sold to Duke Energy. The sale incorporated a five-year agreement under which UPRC agreed to sell its natural gas to Duke Energy.

UP Fuels purchases gas from UPRC at an "index" price. Neither UPRC nor UP Fuels sets the index price. Index prices are published by major industry publications and are based on actual, arms-length transactions in the geographic locations covered by the particular indices. The index price UP Fuels uses to purchase gas from UPRC differs from the index price UP Fuels uses when it sells to independent third parties. Experts testified that UP Fuels uses lower index prices to buy gas from UPRC than when selling gas to a third-party purchaser in the market. When paying royalties, UPRC does not pay based on the amount that UP Fuels obtains when it sells UPRC's gas to independent third-party purchasers, but instead pays royalties based on the amount that UP Fuels pays UPRC.

Appellees, who own royalty interests under leases with UPRC, initially sued appellants for breach of contract, tortious interference with contract, and conspiracy. Appellees then sought certification as members of a class of similarly situated individuals, claiming UPRC and Duke Energy breached covenants implied in the members' leases. In certifying the class, the trial court found that all requirements of Texas Rules of Civil Procedure 42(a) had been met and that Texas Rule of Civil Procedure 42(b) had been satisfied because covenants implied in the individual leases presented common issues of fact and law. Appellants challenge the trial court's order as an abuse of discretion.

## Standard of Review

We review rule 42 orders certifying a class for abuse of discretion. *South-*

*western Refining Co. v. Bernal,* 22 S.W.3d 425, 439 (Tex.2000); *Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 402, 406 (Tex.2000); *General Motors Corp. v. Bloyed,* 916 S.W.2d 949, 955 (Tex.1996). Under this standard, we defer to the ruling of the trial court when discretionary matters depend on the resolution of conflicting facts. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). Discretionary matters that depend on interpreting the law, on the other hand, require no deference: the trial court has no "discretion" when it determines what the law is or when it applies the law to the facts. *Walker,* 827 S.W.2d at 839–40; *see O.C.S., Inc. v. PI Energy Corp.,* 24 S.W.3d 548, 551 (Tex.App.—Houston [1st Dist.] 2000, no pet.) (stating that pure questions of law are reviewable de novo); *Reading & Bates Constr. Co.,* 976 S.W.2d 702, 708 (Tex.App.—Houston [1st Dist.] 1998, pet. denied) (noting that trial court has "no discretion" to err in determining applicable law or to misapply applicable law to facts at issue). A trial court abuses its discretion, therefore, when it misinterprets the governing law or misapplies the governing law. *See Walker,* 827 S.W.2d at 840.

◼ Appellees defend the trial court's ruling as a valid exercise of the broad discretion traditionally accorded to the trial court in certifying a class.[4] The supreme court has recently curbed the breadth of that discretion, however, by instructing trial courts to scrutinize rigorously whether all rule 42 prerequisites to certification have been met. *See Bernal,* 22 S.W.3d at 439; *Beeson,* 22 S.W.3d at 403. The *Bernal* court relied extensively on interpretations under the federal class-action rule, on which rule 42 is patterned. *Bernal,* 22 S.W.3d at 433, 435–36; *Beeson,*

22 S.W.3d at 403–405. Although the flexibility of rule 42 " 'enhances the usefulness of the class-action device[,]' " actual, rather than presumed, conformity to the requirements of the rule is " 'indispensable.' " *Bernal,* 22 S.W.3d at 435 (quoting from *General Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)).

◼ Proper rule 42 analysis demands that trial courts meaningfully determine the class-certification issues by inquiring beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law. *See Bernal,* 22 S.W.3d at 435. Any proposal to expedite resolving individual issues must not unduly restrict a party from presenting viable claims or defenses without that party's consent. *Id.* at 435–36 (citing TEX. R. CIV. P. 815, TEX. GOV'T CODE ANN. § 22.004(a) (Vernon Supp.2001) (Rulemaking power accorded to supreme court "may not abridge, enlarge, or modify the substantive rights of a litigant.")).

## Class–Action Requirements

◼ Class actions furnish an efficient means for numerous claimants with a common complaint to obtain a remedy when obtaining relief is not economically feasible within the traditional framework of multiple, small, individual suits for damages. *Bloyed,* 916 S.W.2d at 952. But, there is no "right" to litigate a lawsuit as a class action. *Bernal,* 22 S.W.3d at 439 (quoting from *Sun Coast Resources, Inc. v. Cooper,* 967 S.W.2d 525, 529 (Tex.App.—Houston [1st Dist] 1998, writ dism'd w.o.j.)).

◼ Class actions must satisfy four threshold requirements: (1) numerosity (the class is so numerous that joinder is

---

4. *E.g., Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 371 (Tex.App.—El Paso 1993, no writ) ("wide" discretion).

impracticable); (2) commonality (there are common questions of fact and law); (3) typicality (the representative's claims are typical of the class); and (4) adequacy of representation (the representative parties will protect the interests of the class). *Bernal*, 22 S.W.3d at 433; TEX. R. CIV. P. 42(a). Additionally, class actions must satisfy one of the four categories of rule 42(b). *Bernal*, 22 S.W.3d at 433; TEX. R. CIV. P. 42(a)-(b).

### Commonality—Predominance

 In their third issue, appellants contend no common question of fact or law predominates, as required by rule 42(b)(4). To satisfy the predominance requirement, the trial court must find that "the questions of law or fact common to the class predominate over any questions affecting individual members[.]" TEX.R. CIV. P. 42(b)(4). Of all prerequisites to class certification, predominance is "one of the most stringent." *Bernal*, 22 S.W.3d at 433. Although the non-exhaustive list of factors in rule 42(b)(4)(A-D) aids the court's rule 42(b)(4) inquiry, predominance is determined by: identifying the substantive issues that are dispositive of the litigation; assessing which issues will predominate; and determining whether these predominating issues are actually common to the class. *Bernal*, 22 S.W.3d at 433–34. *Bernal* further emphasized the importance of the predominance requirement by disapproving decisions that did not apply the predominance requirement to effect its purpose, which is "to prevent class-action litigation when the sheer complexity and diversity of the individual issues would overwhelm or confuse a jury or severely compromise a party's ability to present viable claims or defenses." 22 S.W.3d at 434.

### Implied Covenant in Every Lease?

Predominance in this case hinges on whether the trial court properly implied a covenant to reasonably market the gas in every lease at issue in the class. Appellants contend the trial court violated *HECI Exploration Co. v. Neel*, 982 S.W.2d 881 (Tex.1998), and *Danciger Oil & Refining Co. v. Powell*, 137 Tex. 484, 154 S.W.2d 632, 635 (1941), by concluding, without reviewing the leases, that each lease contained this implied covenant. We agree.

### A. The *HECI/Danciger* Rule

 In *HECI*, royalty owners under mineral leases claimed the defendant lessee had an implied duty to notify them of a claim against the operator of an adjoining lease for damage to a common oil reservoir. 982 S.W.2d at 881. In rejecting this contention, the supreme court reaffirmed that covenants are not to be implied "lightly":

> A covenant will not be implied unless it appears from the express terms of the contract that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it and therefore they omitted to do so, or it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument.

*HECI*, 982 S.W.2d at 888 (quoting from *Danciger Oil & Ref. Co. v. Powell*, 137 Tex. 484, 154 S.W.2d 632, 635 (1941)). Covenants are implied, therefore, only when deemed fundamental to the purpose of a mineral lease and the lease does not expressly address the subject matter of the covenant sought to be implied. *HECI*, 982 S.W.2d at 889. Moreover, an implied covenant must derive entirely from the presumed intent of the parties, as gathered from the written instrument as a whole. *Danciger*, 154 S.W.2d at 635.

■ The supreme court revisited these principles recently in *Yzaguirre v. KCS Resources, Inc.*, 53 S.W.3d 368, 373 (Tex. 2001). *Yzaguirre* reaffirmed there is no implied covenant in an oil and gas lease when the lease expressly covers the subject matter of the covenant sought to be implied. *Id.; see also id.*, 53 S.W.3d at 373 (" '[W]hen parties reduce their agreements to writing, the written agreement is presumed to embody their entire contract, and the court should not read into the instruments additional provisions unless this is necessary in order to effectuate the intention of the parties as disclosed by the contract as a whole.' ") (quoting from *Danciger*, 154 S.W.2d at 635).

■ *Danciger* addressed whether a lease contained an implied covenant to develop the leased property speedily if oil or gas were discovered in paying quantities. *See* 154 S.W.2d at 636. The supreme court began by stating as follows:

> It is not enough to say that an implied covenant is necessary in order to make a contract fair, or without such a covenant it would be improvident or unwise, or that the contract would operate unjustly. It must arise from the presumed intentions of the parties as gathered from the instrument as a whole. However, covenants will be implied in fact when necessary to give effect to the actual intention of the parties as reflected by the contract or conveyance as construed in its entirety in the light of the circumstances under which it was made and the purposes sought to be accomplished thereby.

*Id.* at 635 (internal citations omitted). The court concluded the lease did not contain an implied covenant to develop the leased premises speedily because the lease's multiple provisions reflected the parties' intent to exclude all covenants except those expressly enumerated. *Id.*

Although appellees attempt to distinguish *HECI* on the grounds that it involved a different covenant from the covenant to reasonably market the gas, which they contend is implied in all the leases in the class at issue here, well-settled principles demonstrate that the nature of the covenant is immaterial. An implied covenant is not to be assumed; the court must examine the leases under consideration to determine whether the parties expressly agreed or stipulated to the subject matter of the covenant sought to be implied. *Yzaguirre*, 53 S.W.3d at 373; *Gulf Prod. v. Kishi*, 129 Tex. 487, 103 S.W.2d 965, 969 (1937).

■ In rejecting an implied covenant to further develop a leasehold in *Kishi*, the supreme court emphasized that "an implied covenant arises only out of necessity and in the *absence* of an express stipulation with respect to the development of the leased premises." 103 S.W.2d at 968 (emphasis added). Courts should never override, by implication, the parties' intent expressed in a binding writing and must not make contracts for the parties. *Id.* (quoting from *W.T. Waggoner Estate v. Sigler Oil Co.*, 118 Tex. 509, 19 S.W.2d 27, 30 (1929)). Implied covenants are warranted only when terms of the parties' express agreement " 'makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties' " in the existing express contract. *Kishi*, 103 S.W.2d at 968 (quoting from *Freeport Sulphur Co. v. American Sulphur Royalty Co.*, 117 Tex. 439, 6 S.W.2d 1039, 1040 (1928) (emphasis by the *Kishi* court)). Because the lease specified the number of wells to be drilled, the *Kishi* court concluded the lease did not contain an implied covenant to further develop the lease. *Id.*

*Yzaguirre* reaffirmed these principles by concluding that royalty owners, whose lease required a market-value royalty,

could not rely on an implied covenant to reasonably market in order to claim additional royalties beyond those originally contemplated. *See* 53 S.W.3d at 373. The court reasoned that the express terms of the lease established an objective basis for calculating royalties, which basis was independent of the price actually obtained. *Id.*, 53 S.W.3d at 373.

## B. *Yzaguirre: Cabot* Does not Alter *HECI/Danciger* Rule

 Appellees also dispute the *HECI/Danciger* rule by focusing on *Cabot Corp. v. Brown*, 754 S.W.2d 104 (Tex.1987), which, they claim, decreed: that "all" Texas oil and gas leases contain three categories of implied covenants; that one of these is the implied covenant to manage and administer the lease; and that this implied covenant, in turn, encompasses the duty to reasonably market the oil or gas produced. *See* 754 S.W.2d at 106.

*Cabot* relied on the supreme court's earlier decision in *Amoco Production Co. v. Alexander*, 622 S.W.2d 563 (Tex.1981). Although the *Amoco* court acknowledged three broad categories of implied covenants, the court began by reiterating the fundamentals of the *HECI/Danciger* rule: "Since the early history of oil and gas litigation, the courts have held that covenants are implied when an oil and gas lease *fails to express* the lessee's obligation to develop and protect the lease." 622 S.W.2d at 567 (emphasis added); *see also id.* at 571 ("In the *absence* of express provisions to the contrary, the lease imposes upon the lessee several implied covenants . . . .") (emphasis added).

The supreme court's *HECI* decision further rejected that the word "all" in *Amoco* created a broad, general rule. *HECI* reaffirmed *Danciger* and, therefore, *Kishi* and, in turn, its precedents, all of which hold that covenants are implied only when

terms are missing from the contract and the covenant is necessary to give effect to existing, express terms. *See HECI*, 982 S.W.2d at 888; *see also Yzaguirre*, 53 S.W.3d at 373. In reaffirming this rule in *Yzaguirre*, the supreme court also rejected the royalty owners' reliance on *Cabot*. *Yzaguirre*, 53 S.W.3d at 373.

In defending the order certifying the class here as a valid exercise of the trial court's discretion, appellees have asked, by post-submission briefing, that we follow *Union Pacific Resources Group, Inc. v. Hankins*, 51 S.W.3d 741 (Tex.App.—El Paso 2001) (not yet reported), which they contend upheld a similar class certification order. We decline to follow *Hankins* because it refused to consider the implications of *Yzaguirre*. *Hankins*, 51 S.W.3d at 749. In declining to consider *Yzaguirre*, the El Paso court reasoned that applying its rule would violate the prohibition against considering the merits of the parties' claims or defenses when determining whether to certify the class. *See id.* While we acknowledge that *Yzaguirre* was not a class-action case, we disagree that considering the substantive law of *Yzaguirre* amounts to considering the merits in violation of *Beeson*.

 As the dissenting opinion emphasizes, *Beeson* reiterates the well-settled prohibition against deciding the merits of the case in certifying the class. 22 S.W.3d at 404. In reiterating the prohibition, however, *Beeson* also recognizes that trial courts must be able to look beyond the pleadings to make a reasoned inquiry of the certification issues because class determinations involve considerations enmeshed in the legal and factual issues that comprise the plaintiffs' claims. *Id.* Moreover, with respect to predominance, the "most stringent" of the rule 42(b)(4) requirements, *Bernal* also requires the trial court

to identify the dispositive substantive issues in the case. 22 S.W.3d at 434.

No covenant can be implied in an oil and gas lease without "first" examining the express terms of the existing lease contract. *Kishi*, 103 S.W.2d at 969. To acknowledge this mandatory, initial inquiry is to comply with settled law that requires the trial court to identify the substantive issues that are dispositive of the litigation. *Bernal*, 22 S.W.3d at 434. To acknowledge this mandatory, initial inquiry is not, as the dissenting opinion contends, to "decide," "examine," "determine," or "evaluate" the merits of class members' claims or the defendants' defenses.

■■■■ The class certified here is premised on the existence of an implied covenant to reasonably market in each leasing contract—a premise reached without benefit of the preliminary inquiry mandated by *Kishi* and its progeny. By certifying the class on the basis that each of the leases contains a covenant to reasonably market the gas, the trial court not only did not comply with its rule 42(b)(4) duty to identify the substantive issues that are dispositive of the litigation, but also violated the *HECI/Danciger* rule. Certifying the class also defeated the standard appellees wished to impose through an implied covenant to reasonably market, that of the "reasonably prudent operator under the same or similar circumstances." *See Cabot*, 754 S.W.2d at 106. Determining the best reasonably attainable price under same or similar circumstances necessarily contemplates a fact specific, location-by-location inquiry for each lease. *See Parker v. TXO Prod. Corp.*, 716 S.W.2d 644, 646–47 (Tex.App.—Corpus Christi 1986, no writ). For these reasons, individual, rather than common, issues predominate.

By misinterpreting and misapplying substantive law in determining that the class proposed for this case satisfied the predominance requirements of rule 42(b)(4), the trial court abused its discretion in certifying the class. We sustain appellants' third issue presented. Having concluded that certification was improper because common issues of fact and law do not predominate, we need not address appellants' remaining issues.

## Conclusion

We reverse the trial court's order certifying the class and remand the cause to the trial court with instructions to decertify the class.

COHEN, Justice, dissenting.

The majority opinion states that the trial judge erred "by certifying the class on the basis that each of the leases contains a covenant to reasonably market the gas . . . ." It holds that none of the leases contains that implied covenant because, as a matter of law, that implied covenant does not exist. If so, appellants' remedy is not to decertify the class; it is to move for summary judgment. I dissent because the majority opinion seems to grant a summary judgment on that basis, even though appellants never requested it, the trial judge never granted it, and that issue is therefore not before us for review.

The Supreme Court, this Court, and most other Texas appellate courts have stated that, in deciding whether class certification is appropriate, a court should not "decide," "examine," "determine," "consider," or "evaluate" the merits of the underlying claims and defenses. *See Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 404 (Tex.2000) ("Deciding the merits of the suit in order to determine its maintainability as a class action is not appropriate."); *Union Pac. Resources Group v. Hankins*, 51 S.W.3d 741, 747 (Tex.App.—El Paso 2001, no pet. h.) (designated for publication) (court should not "examine" merits of

claims or defenses); *State Farm Mut. Auto. Ins. Co. v. Lopez,* 45 S.W.3d 182, 191 (Tex.App.—Corpus Christi 2001, pet. filed June 18, 2001) (rejecting the argument that *S.W. Refining Co. v. Bernal,* 22 S.W.3d 425 (Tex.2000), "requires the trial court to examine the merits of the case before granting certification, and requires the reviewing court to make the same analysis," stating that courts are "[n]ot to determine the merits of the suit," and stating that *Bernal* did not change that rule); *Peltier Enters. v. Hilton,* 51 S.W.3d 616, 621 (Tex.App.—Tyler 2000, pet. denied, rehearing on pet. filed Aug. 20, 2001) (designated for publication) (appellate courts "may not consider the substantive merits of the case...."); *W. Teleservices, Inc. v. Carney,* 37 S.W.3d 36, 40 (Tex.App.—San Antonio 2000, no pet.) ("class proponents ... are not required to prove a prima facie case ... in support of a motion for class certification."); *Henry Schein, Inc. v. Stromboe,* 28 S.W.3d 196, 210 (Tex.App.—Austin 2000, pet. dism'd w.o.j.) (refusing to "[c]onsider the merits of appellees' claims, as well as the merits of [appellants'] defenses to appellees' claims."); *Charlie Thomas Courtesy Leasing, Inc. v. Taylor,* 44 S.W.3d 684, 687, 689 (Tex.App.—Houston [14th Dist.] 2001, no pet.) ("[c]lass certification is not the appropriate stage of litigation for evaluating the substantive merits of each class member's claim...."); *Grizzle v. Texas Commerce Bank, N.A.,* 38 S.W.3d 265, 274 n. 8 (Tex.App.—Dallas, 2001, pet.filed) ("Certification of a class action ... does not depend on the merits of the litigation."); *Graebel/Houston Movers, Inc. v. Chastain,* 26 S.W.3d 24, 29 (Tex.App.—Houston [1st Dist.] 2000, pet. dism'd) ("Trial courts ... may not consider the substantive merits of the class claims in making a determination."). These courts have stated this principle both in cases granting and in cases denying class certification. *See Lopez,* 45 S.W.3d at 191 (granting); *Peltier,* 51 S.W.3d at 621 (denying).

The standard of review for class action certification is abuse of discretion. *S.W. Refining Co. v. Bernal,* 22 S.W.3d 425, 439 (Tex.2000). That standard obviously favors a trial judge's ruling. Yet, by this appeal, appellants have not only surmounted all hurdles posed by this once formidable standard of review, they have gone on to seek and apparently to win an appellate summary judgment on the merits against appellees' implied covenant claim, relief they never sought in the court below. If *Yzaguirre*[1] requires that ruling, we should make it after appellants have moved for it, appellees have responded to it, and the trial judge has ruled on it, not before.

I respectfully dissent.

MARGARET GARNER MIRABAL, Justice, dissenting to denial of en banc reconsideration.

Appellees, Russell Neinast, W.J. Bowen, Jr., and Villette Finke, have filed a motion for rehearing, and rehearing en banc, of the Court's opinion issued on September 20, 2001. The panel denied the motion for rehearing, and the Court has denied the motion for rehearing en banc.

I respectfully dissent from denial of the motion for en banc reconsideration. I would affirm the trial court's order certifying the class.

A majority of the justices of the panel voted to deny the motion for rehearing. Tex.R.App. P. 49.3.

Justice COHEN dissenting from denial of the motion for rehearing. Tex.R.App. P. 49.3.

1. *Yzaguirre v. KCS Resources, Inc.,* 53 S.W.3d 368 (Tex.2001).

A majority of the justices of the Court voted to deny the motion for en banc reconsideration. Justices COHEN, MIRABAL, WILSON, and HEDGES voted to grant en banc reconsideration. Tex.R.App. P. 49.7.

Chief Justice SCHNEIDER did not participate in the decision to deny the motion for en banc reconsideration.

Justice MIRABAL, dissenting, with opinion, from denial of the motion for en banc reconsideration.