Opinion issued April 30, 2003









             




In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-02-00279-CV
____________

CAPITAL ONE BANK, CAPITAL ONE SERVICES, INC., CAPITAL ONE
F.S.B., AND CAPITAL ONE FINANCIAL CORPORATION, Appellants

V.

SELAINE ROLLINS, INDIVIDUALLY, AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED, Appellee




On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Cause No. 00-CV-0169




O P I N I O N

          In this interlocutory appeal, Capital One,


 a national issuer of credit cards,
challenges the trial court’s order granting class certification to two groups of Capital
One credit card holders. We address whether the trial court abused its discretion in
certifying each of the two subclasses. After analyzing each subclass under the
requirements enunciated by the Texas Supreme Court in Southwestern Refining
Company v. Bernal, 22 S.W.3d 425 (Tex. 2000) and Intratex Gas Company v.
Beeson, 22 S.W.3d 398 (Tex. 2000), we reverse the trial court’s class-certification
order and remand to the trial court with instructions to decertify both classes but
without prejudice to further consideration of class certification.
CASE OVERVIEW
          Class representative, Selaine Rollins, (“Rollins”) obtained both a Visa card and
MasterCard account with Capital One.


 Rollins, individually, and on behalf of
similarly situated credit card holders, filed this nationwide class action suit against
Capital One complaining of the manner in which Capital One charged late and
“overlimit fees.” Rollins alleges the manner in which these fees were charged
breached her contract with Capital One, known as a “customer agreement.” The
customer agreement provision governing the imposition of such fees stated:
Other Charges. The following charges may be billed to the purchase
segment of your account, unless otherwise specified: late charge if we
do not receive your payment in time for it to be credited by the
following statement closing date; overlimit charge if your account
exceeds any temporary or permanent assigned credit limit, even if
we approve the overlimit amount; returned check charge if a check is
returned to us for any reason, or if we cannot honor your account access
checks for any reason . . . .

(Emphasis added.)
          With regard to late fees, Rollins challenges Capital One’s former policy of
failing to credit its customers’ payments on the date of receipt when those payments
were received after the “cutoff” time of 9:00 a.m.


 Rollins contends this practice
allowed Capital One to charge its customers late fees when payments were received
on the payment’s due date, but after 9:00 a.m. 
          Rollins asserts the practice is particularly egregious when viewed in the context
of how Capital One received its customer payments. Rather than allowing the postal
service to deliver customer payments to its processing center, Capital One sent
couriers to the post office to pick up its mail. Rollins argues such practice allowed
Capital One to control the number and timing of the payments received on any given
day. 
          Rollins also complains of Capital One’s policy related to “overlimit fees.” 
Capital One imposed an overlimit fee when the customer’s account exceeded a
defined credit limit. Rollins does not take issue with the initial charge of an overlimit
fee; rather, she complains of Capital One’s policy of charging an overlimit fee for
each consecutive billing period that the customer’s balance remained over the credit
limit, but at no time fell below the limit. Rollins contends this practice violates the
plain language of the customer agreement governing overlimit fees, i.e., that Capital
One may bill an “overlimit charge if your account exceeds any temporary or
permanent assigned credit limit, even if we approve the overlimit amount.” 
According to Rollins, under the terms of the customer agreement, Capital One should
only be allowed to charge the overlimit fee one time, that is, when the customer
initially exceeds the credit limit. If during the next and subsequent billing periods the
account balance does not fall below the set credit limit, Rollins contends the customer
agreement does not allow Capital One to continue to charge overlimit fees. Capital
One counters that the customer agreement “unambiguously and explicitly” provides
that an overlimit fee can be charged for each billing period in which the account
balance remains over the credit limit, even if the account balance never falls below
the credit limit during the second and subsequent billing periods. 
          Rollins moved for class certification relating to her overlimit and late fee
claims. Rather than conducting an evidentiary hearing on the certification issue, the
trial court instructed the parties that evidence would be considered by written
submission. In accordance with the trial court’s instructions, the parties filed briefs
and supporting evidentiary materials, which form the basis for the trial court’s ruling. 
The trial court then conducted a class certification hearing at which counsel simply
presented oral argument. Following the submission of additional briefing, the trial
court signed a “Class Certification Order,” certifying two classes of Capital One
credit card holders pursuant to Texas Rule of Civil Procedure 42.
          The trial court defined membership in the two classes as follows:
Class No. 1 (“Overlimit Fee Class”): All past and present Capital One
Bank credit card holders (a) with an account active at any time after
January 1, 1995, and not in “default” according to Capital One’s records
on the date the class is certified; (b) with a customer agreement which
provides for the assessment of an overlimit fee but does not expressly
specify that this overlimit fee will be assessed for each billing period
that the account remains over the limit; and (c) that were assessed
overlimit charges for two or more consecutive billing periods because 
the account balance was over the credit limit but where, at no time
during the second or subsequent of these billing periods, was the
account balance within its credit limit.
 
Class No. 2 (“Late Fee Class”): All past and present Capital One Bank
credit card holders (a) with an account active at any time after January
1, 1995, and not in “default” according to Capital One’s records on the
date the class is certified; (b) that tendered conforming payments during
the time period Capital One did not credited [sic] payments received
after 9:00 a.m. on the day they were received but instead posted the
credit on the following day; and (c) that we assessed a late fee because
the payment was credited to the account within five business days after 
the payment due date. This class is certified pursuant to Rule 42(b)(4).
 
The terms “default,” “conforming payments,” “late fee” and “overlimit
fee” shall have the meaning as defined in the customer agreements and
as used by Capital One in its course of business. In particular, an
account is defined to be in “default” if the account has been declared by
Capital One to be in a “default” status.

          In seven issues, Capital One contends the trial court erred in certifying the two
subclasses because the prerequisites for class certification under Rule 42 were not
satisfied for either class. Included in these issues are Capital One’s challenges that
(1) the Overlimit Fee Class definition creates an impermissible “failsafe” class and
(2) individual issues predominate over common ones with regard to the Overlimit Fee
Class.
 
STANDARD OF REVIEW
          We review a trial court’s ruling on class certification for abuse of discretion.
Henry Schein, Inc. v. Stromboe, 46 Tex. Sup. Ct. J. 103, 112 (October 31, 2002);
Bernal, 22 S.W.3d at 433; Union Pac. Res. Group, Inc. v. Neinast, 67 S.W.3d 275,
279-80 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Under this standard, we defer
to a trial court’s rulings when discretionary matters depend on the resolution of
conflicting facts. Neinast, 67 S.W.3d at 280; see also Schein, 46 Tex. Sup. Ct. J. at
112 (stating that only “some of [the trial court’s] determinations—like those based
on its assessment of the credibility of witnesses” must be “given the benefit of the
doubt.”). However, we cannot indulge every presumption in favor of the trial court’s
ruling. Schein, 46 Tex. Sup. Ct. J. at 112. A trial court abuses its discretion when it
misinterprets or misapplies the governing law. Neinast, 67 S.W.3d at 280. 
STATUTORY REQUIREMENTS FOR CERTIFICATION
          Rule of civil procedure 42 governs class certification. Tex. R. Civ. P. 42. A
member of a class may sue or be sued as a representative party of the class only if all
of the following requirements of Texas Rule of Civil Procedure 42(a) are satisfied:
(1) the class is so numerous that joinder of all members is impracticable; (2) there are
questions of law or fact common to the class; (3) the claims or defenses of the
representative parties are typical of the claims or defenses of the class; and (4) the
representative parties will fairly and adequately protect the interests of the class. 
Tex. R. Civ. P. 42(a). In addition, a party seeking class certification must prove at
least one of the following requirements enumerated in Rule 42(b): (1) adjudication
of separate actions would create a risk of inconsistent results or impairment of the
interests of other members not parties to the adjudication; (2) the defendant has acted
or refused to act on grounds applicable to the entire class; (3) the object of the action
is the adjudication of claims affecting specific property involved in the action; or (4)
common questions of law or fact predominate over any questions affecting only
individual members, and a class action is the superior method of fairly and efficiently
adjudicating the controversy. Tex. R. Civ. P. 42(b).
          The class action serves as a mechanism to eliminate or reduce the threat of
repetitive litigation, prevent inconsistent resolution of similar cases, and provide a
means of redress for individual claims that are too small to make independent actions
economically viable. Ford Motor Co. v. Sheldon, 22 S.W.3d 444, 452 (Tex. 2000).
However, even though class certification is an efficient litigation device, a trial court
cannot presume compliance with Rule 42, and it must determine whether compliance
has been demonstrated. Schein, 46 Tex. Sup. Ct. J. at 114.
 
 
                                                      DISCUSSION
The Overlimit Fee Class Definition
          In issue six, Capital One contends that the Overlimit Fee Class definition is
fatally defective because it creates an impermissible failsafe class, that is, a class that
cannot be defined until the case is resolved on its merits. 
          The supreme court has held that, as a threshold matter, “Rule 42 implicitly
requires the representative plaintiffs to demonstrate . . . that [the proposed class] is
susceptible to precise definition.” Beeson, 22 S.W.3d at 403. This, in turn, means
“class members must be presently ascertainable by reference to objective criteria.” 
Id. Stated differently, the class definition “should not be defined by criteria that are
subjective or that require an analysis of the merits of the case.” Id. “Deciding the
merits of the suit in order to determine the scope of the class or its maintainability as
a class is not appropriate.” Id. at 404. “A proposed class definition that rests on the
paramount liability question cannot be objective, nor can the class members be
presently ascertained; when the class definition is framed as a legal conclusion, the
trial court has no way of ascertaining whether a given person is a member of the class
until a determination of ultimate liability as to that person is made.” Id. Such a
definition creates a failsafe class because the class would be bound only in the event
of a judgment favorable to the plaintiffs. Id. at 404-05.
          The trial court’s ruling in Beeson defined the class as gas producers “whose
natural gas was taken by the defendant in quantities less than their ratable
proportions.” Id. at 405. The supreme court found that this ruling was an abuse of
discretion because the certified issue was whether Intratex had taken nonratably from
the producers. Id. 
          Similarly, in Sheldon, the supreme court found the trial court’s definition
impermissible. 22 S.W.3d at 454-55. There, the class was defined as those “who
suffered past and/or future damage as a result of peeling or flaking paint on these
vehicles caused by a defective paint process” or “who paid Ford or a Ford dealership
for a paint repair to their vehicle to repair peeling or flaking paint caused by a
defective paint process. . . .” Id. at 448. The trial court’s definition was found to be
impermissible under Beeson because if the paint process was not defective, then no
class would exist. Id. at 454. Including the defective paint process theory as an
element of the class definition impermissibly required a determination of the merits
before the court could ensure the existence of a class. See id.
          Here, the trial court’s definition of the Overlimit Fee Class is defective because
it creates a failsafe class. The second element of the trial court’s class
definition—“[a]ll past and present Capital One Bank credit card holders . . . with a
customer agreement which provides for the assessment of an overlimit fee but does
not expressly specify that this overlimit fee will be assessed for each billing period
that the account remains over the limit”—cannot be determined by objective criteria;
rather, it is stated as a legal conclusion. 
          There is strong disagreement between the parties about the meaning of the
customer agreement. Capital One contends that the agreement “expressly specif[ies]”
that the overlimit fee will be assessed for each billing period that the account remains
over the limit. Rollins takes the opposite position, arguing that the unambiguous
language of the customer agreement provides that the overlimit fees may be assessed
only for that point in time when the account goes over its credit limit. Rollins further
argues that even if the language is ambiguous, Capital One failed to cite any
admissible evidence that would be relevant in the interpretation of the contract
language. 
          We conclude that the class definition depends on the resolution of the predicate
legal issue at the heart of the Rollins’s breach of contract claim, i.e., whether the
customer agreement “expressly” provides, as claimed by Capital One, that an
overlimit fee can be charged for each billing period that the account balance remains
over the credit limit. That is, the trial court must make a legal determination of the
merits of the issue.
          Any determination by the trial court that the “plain language” of the customer
agreement allows an overlimit fee to be charged for each billing period the account
balance remains over the credit balance would obviate the class and preclude the
proposed class members from being bound by the judgment. See Beeson, 22 S.W.3d
at 405. If the trial court made such a determination, then it logically would follow
that the class had been improperly certified because the class did not, in fact, exist. 
See id. If, on the other hand, the trial court adopted Rollins’s position and determined
that the customer agreement did not permit Capital One to charge the overlimit fee
for every consecutive billing period, then class membership would at that time be
ascertainable. In such event, Capital One would be liable for breach of the customer
agreement and the litigation would be concluded on that issue. See id. The problem
with such an approach was aptly summed up by the Beeson court as follows: “We do
not support such a result when ‘Rule [42] was never meant to be an exception to the
rules of res judicata or to provide a risk-free method of litigation.’” Id. at 405
(quoting Dafforn v. Rousseau Assoc., 1976-2 Trade Case ¶ 61, at 219 (N.D. Ind.
1976)).
          Because the class definition in this case is not precise, and its members cannot
be ascertained until a merits determination is made as to a predicate legal issue on
which the ultimate liability of Capital One turns, we conclude that the trial court
abused its discretion in certifying the Overlimit Fee Class.
          Without a sufficiently defined class to bring this action, Rollins cannot
currently meet Rule 42’s prerequisites. Id. at 408. Only with a properly defined class
can the explicit class-certification provisions be examined appropriately. Id.
Accordingly, we do not reach Capital One’s issues concerning the Rule 42(a) and (b)
requirements as they relate to the Overlimit Fee Class. Upon remand, if the trial court
finds a suitable class definition, it must also ensure that the newly defined class
complies with the requirements of rule 42(a) and (b).


 Id. 
          We sustain the portion of issue six regarding Capital One’s contention that the
definition of the Overlimit Fee Class is fatally defective because it creates a failsafe
class. 
Predominance
          In issue two, Capital One complains that certification pursuant to subsection
(b)(4) of Rule 42 was improper with regard to both classes because individualized
issues predominate over common ones. Because we have determined that the trial
court abused its discretion when it certified the Overlimit Fee Class, we discuss this
issue only as it relates to the Late Fee Class.
          The trial court certified the Late Fee Class under Rule 42(b)(4). By certifying
the Late Fee Class under that subsection, the trial court was required to find that
“questions of law or fact common to the class predominate over any questions
affecting only individual members,” a criterion known as “predominance,” and that
“a class action is superior to other available methods for fair and efficient
adjudication of the controversy.” Tex. R. Civ. P. 42(b)(4). 
          To aid a court in determining if (b)(4) certification is appropriate, Rule 42(b)(4)
establishes the following list of non-exhaustive factors to consider:
(A) the interest of members of the class in individually controlling the
prosecution or defense of separate actions; (B) the extent and nature of
any litigation concerning the controversy already commenced by or
against members of the class; (C) the desirability or undesirability of
concentrating the litigation in the particular forum; (D) the difficulties 
likely to be encountered in the management of a class action. 
Id.
          The parties in this case hotly contest the issue of predominance with regard to
the Late Fee Class. In Bernal, the supreme court considered Rule 42(b)(4)’s
predominance requirement to be “one of the most stringent prerequisites to class
certification.” 22 S.W.3d at 433. The predominance requirement is intended to
prevent class action litigation when the sheer complexity and diversity of the
individual issues would overwhelm or confuse a jury or severely compromise a
party’s ability to present viable claims or defenses. Id. at 434. 
          To determine if common issues predominate, a trial court must identify the
substantive issues of the case that will control the outcome of the litigation, assess
which issues will predominate, and determine if the predominating issues are, in fact,
those common to the class. Id. The test for predominance is not whether common
issues outnumber uncommon issues but, “whether common or individual issues will
be the object of most of the efforts of the litigants and the court.” Id. (quoting
Central Power & Light Co. v. City of San Juan, 962 S.W.2d 602, 610 (Tex.
App.—Corpus Christi 1998, writ dism’d w.o.j.)). Common issues do not predominate
if, after common issues are resolved, presenting and resolving individual issues are
likely to be overwhelming or unmanageable task for a single jury. Id. “Ideally, a
judgment in favor of the class members should decisively settle the entire
controversy, and all that should remain is for other members of the class to file proof
of their claim.” Id. (quoting Life Ins. Co. of the Southwest v. Brister, 722 S.W.2d 764,
772 (Tex. App.—Fort Worth 1986, no writ)).
          As stated above, Rollins claims that Capital One breached the customer
agreement by failing to credit payments on the day of receipt if the payment was
received after 9 a.m. Capital One contends that the predominance requirement is not
met with regard to this claim because common issues do not predominate over
individual issues. Capital One asserts that, even if the class can show that Capital
One’s practice of failing to credit payments received after 9 a.m. breached the
customer agreement, each individual claimant would still have to separately show
when and how his or her payments were received to establish Capital One’s liability.
          A review of the record indicates that it would be a difficult task at best to
determine when individual payments were received and available to be credited by
Capital One. Capital One’s internal records do not show the time and date when it
actually received a particular payment. Though a record was kept of the date that a
customer’s payment was credited, Capital One disposed of the envelopes in which
customer payments were received and did not mark its customer’s checks or payment
coupons with the date and time that a payment was received by the payment
processing center. Capital One maintains that, for class members to recover, each
member would have to bring forward individualized proof to show when Capital One
received payment. In so doing, Capital One argues that individual issues would
predominate over common ones at trial. We agree.
          The issue of whether Capital One’s liability with regard to the late fees could
be proven on a class-wide basis, as opposed to on an individual basis, was discussed
at the class certification hearing. Rollins assured the trial court that offers of
individualized proof to establish Capital One’s liability could be avoided by using (1)
evidence obtained from the courier service that picked up Capital One’s mail from the
post office, (2) statistical evidence, or (3) a spoliation instruction. 
          With regard to evidence from the courier service, Rollins’s counsel explained
as follows:
I think there may be some evidence, and that evidence would come from
the courier service who we have not yet deposed yet. But the courier
service — they had a former one and now they have a new one. We
don’t know what records the courier service still has to what [sic] they
dropped off, either whether it was by weight, numbers — we just don’t
know. But we’re going to see what the courier service has, and we may
be able to prove it as evidence.
(Emphasis added.)
          Rollins also told the trial court that the claims could be proven class-wide by
“statistical evidence that will determine what percentage of the claims are posted on
the date available.” Rollins proposed that the claims could be shown by “[s]tatistical
evidence and evidence from courier services (present and former) to determine what
percentage of claims [sic] are not posted on the date available” and “[s]tatistical
review of the [Capital One’s] computer accounts records to determine how many
accounts charged late fees as a result of failure to post payment on date of receipt
made available from post office.” 
          Lastly, Rollins asserted that individualized proof could be avoided by applying
a spoliation presumption. Rollins bases her entitlement to such presumption on
Capital One’s destruction of the envelopes containing its customers’ payments. 
Relating to this theory, in a filing with the trial court, Rollins stated, “In the event that
at trial [the] jury finds [Capital One’s] destruction of evidence was intentional and
knowing and direct causation by class member is not possible, then jury to award [sic]
damages based on expert statistical studies based upon percentage of payments not
posted on the day made available in relation to total late fees charged in each year.” 
          With regard to how the late fee claims would be tried, the trial court ordered
as follows:
Liability for the breach alleged by the Late Fee Class may initially
require the Court to analyze and determine several legal issues,
specifically, construction of the contract and consideration of any class-wide defenses Capital One may assert. The Court may also be required
to make legal determinations pertaining to Plaintiffs’ methodology for
proving the Late Fee Class claims and Plaintiffs spoliation allegations. 
After determination of these matters of law, disputed fact issues
remaining for trial by jury may include (1) whether imposition of the 9
a.m. cut-off resulted in payments not being posted on the day made
available from the post office, if so (2) how tardy was the crediting of
the payment as a result of Capital One’s mail handling procedures, and
(3) which class members are entitled to recover damages based upon the
expert evidence. The precise method for ascertaining, and the
procedures for paying, any damages will depend on determinations
made by the finder of fact. In particular, the jury’s acceptance or
rejection of expert testimony, and the jury’s findings concerning
Plaintiffs’ expoliation [sic] claims, will impact the assessment of
damages. At the onset, however, Plaintiffs propose that the universe of
class members which may have been damaged by Capital One’s
procedures can be ascertained by expert statistical evidence, and the
individuals out of that group actually harmed can be determined through
a proof-of-claims procedure.

(Emphasis added.)
          On appeal, with regard to resolving the predominance problem presented by
the late fee claim, Rollins states that the certification order “allows [Rollins] to
employ statistical methods for establishing liability and damages using data from
Capital One and expert conclusions derived from examination of this data.” 
However, this misstates the order. The certification order provides that the trial court
“may also be required to make legal determinations pertaining to Plaintiffs’
methodology for proving the Late Fee Class claims and Plaintiffs’ spoliation
allegations.” We can only assume that the phrase “Plaintiffs’ methodology” refers
to the statistical methodology proposed by Rollins. Moreover, the order does not
“allow [Rollins] to employ statistical methods for establishing liability and damages”;
rather, it states that the trial court is reserving the decision regarding the propriety of
the statistical methodology and spoliation claim to a later day.
          Rollins failed to make even a cursory showing that using statistical evidence
was a viable means to obviate the need for individualized proof. Other than the mere
assurances of Rollins’s counsel that statistical methods could be used to establish
liability and damages, Rollins failed to present any expert testimony or other evidence
to the trial court to establish that such methodology was even feasible. Rollins
proposed that the data on which the statistical methodology was based would include
information obtained from Capital One’s courier service and Capital One’s own
records. However, at the time of the certification hearing, Rollins’s counsel admitted
that it was unknown what, if any, useful information could be obtained from the
courier service. Rollins also failed to explain how the data found in Capital One’s
records could be used to extrapolate when Capital One received its customers’
payments. To the contrary, it is undisputed that Capital One’s records do not indicate
the time and date a payment was actually received.


 Thus, at the time the trial court
signed the certification order, it was not determinable whether statistical evidence
could overcome the need for individualized proof to be offered at trial.


 
          Likewise, Rollins failed to adequately show how a spoliation instruction could
be utilized. Rollins bases her spoilation theory on Capital One’s admitted destruction
of the envelopes in which it received its customers’ payments. However, at the class
certification hearing, the trial court correctly observed that the envelopes show only
the date the post office received the payment, not the specific time Capital One
received the payment. See Ordonez v. M.W. McCurdy Co., Inc., 984 S.W.2d 264, 273
(Tex. App.—Houston [1st Dist.] 1998, no pet.) (stating intentional spoliation of
evidence relevant to case raises a presumption that the evidence would have been
unfavorable to the cause of the spoliator). Although not entirely clear from either the
record or the briefing, Rollins appears also to contend that a spoliation instruction
would be appropriate because Capital One failed to create records showing the time
a particular payment was received. However, spoliation is defined as the destruction
of evidence, not the failure to create evidence. See Brewer v. Dowling, 862 S.W.2d
156, 158 n. 2 (Tex. App.—Fort Worth 1993, writ denied) (citing Black’s Law
Dictionary 1257 (5th ed. 1979)). Thus, insofar as the record reflects, Rollins’s
spoliation theory is not shown to be a viable method that will replace the need for
individualized proof to be offered by each class member. 
          In conducting the initial evidentiary review, the trial court must undertake a
cautious approach to certification and rigorously scrutinize whether the requirements
of Rule 42, particularly the predominance requirement of subsection (b)(4), have been
met before ruling on class certification. Bernal, 22 S.W.3d at 435. In making this
rigorous analysis, the court must consider how the claims will likely be tried so that
conformity with Rule 42 can be meaningfully evaluated. Id. The court is not
permitted to adopt a “certify now and worry later” approach to certification. Id. 
          We recognize that the decision regarding class certification occurs early in the
litigation process before many issues in the case have been fully developed. And we
appreciate the difficult task that a trial court often faces in balancing the requirements
of the rules governing certification with the challenges presented by the case’s
infancy. However, as noted above, a trial court must perform a rigorous analysis
before making its preliminary determination about whether the issue of predominance
can be resolved. Bernal, 22 S.W.3d at 435. If the proponent of the class certification
fails to present the trial court with sufficient evidence or information to make that
determination, then the trial court should not certify the class at that time. As the
Texas Supreme Court warned in Bernal, a trial court cannot rely on mere assurances
of counsel that any problems with predominance will be overcome. Id. Rigorous
analysis is particularly important when, as here, the theories being advanced serve to
alter the burdens of proof and restrict a defendant’s ability to defend itself against
liability. 
          By failing to make a determination regarding the viability of Rollins’s
statistical methodology and spoliation theories, the trial court adopted an approach
disavowed by Bernal and improperly relied on counsels’ mere assurances that the
predominance problem could be overcome by statistical evidence or by a spoliation
instruction. Thus, we hold the trial court abused its discretion in certifying the Late
Fee Class.
          We sustain Capital One’s issue two as it relates to the Late Fee Class.
CONCLUSION
          We reverse the trial court’s certification order and remand the cause to the trial
court with instructions to decertify the Overlimit Fee Class and the Late Fee Class.


 
Our action is without prejudice to a further attempt by Rollins to seek certification of
either class.
 
 
                                                                        Frank G. Evans



                                                                        Justice
 
Panel consists of Justices Hedges, Jennings, and Evans.